FOX, *Appellant,* v. MISSION FREE SCHOOL.

Division One, February 19, 1894.

1. Contract: PARTY WALL. A contract as to the erection and use of a party wall construed.

2. ———: ———. One of two joint owners of a party wall can use it as he deems proper, provided he does not injure the property of the adjoining owner.

3. ———: ———. Where parties to a contract speak of a party wall as a support for a building to be thereafter constructed, the erection of a substantial structure which receives the support from the party wall is meant.

*Appeal from St. Louis City Circuit Court.*—HON. JAS. E. WITHROW, Judge.

AFFIRMED.

*H. J. Grover* for appellant.

(1) It was error for the lower court to give the instruction asked by the defendant at the close of plain-

tiff's evidence, to the effect that upon the pleadings and the evidence the plaintiff could not recover. *Greenwald v. Kappes*, 31 Ind. 216; *Allen v. Co.*, 11 Pa. Co. Ct. 231; *Nalle v. Paggi*, 81 Tex. 201; *McEwen v. Nelson*, 40 Ill. App. 272; *Kingsland v. Tucker*, 115 N. Y. 578; *Shaw v. Hitchcock*, 119 Mass. 254; *Harber v. Evans*, 101 Mo. 668; *Day v. Caton*, 119 Mass. 515; *Auch v. Labouisse*, 20 La. Ann. 554; Webster's Dictionary, *verbo*, "House;" 2 Am. and Eng. Encyclopedia of Law, *verbo*, "Building," 609; Lloyd on Building and Buildings, secs. 185, 188, p. 353; *Sauer v. Monroe*, 20 Pa. St. 219; *Bailey's Appeal*, 1 Weekly Notes of Cases, p. 350. (2) It was error in the court to permit the defendant to introduce evidence as to conversations between Fox and McKittrick prior to the making of the contract; and evidence of conversations between Fox and Stockwell as to Fox's agreement with Stockwell, and alleged repudiation of such agreement. If the court considered such evidence competent and material, it is impossible to say that such evidence had no influence upon the mind of the court in giving the instruction of nonsuit.

*Lee, McKeighan & Priest* for respondent.

(1) No error was committed by the court below. The defendant was not required to pay its agreed portion of the cost of the party wall until it made use of the same "as a wall and for the support of any building which may hereafter be constructed on its said premises." The evidence does not show that any other or substantially different building had been constructed prior to the commencement of this suit, or since, by the defendant on the premises in question. (2) The defendant had a right to use the party wall gratuitously and without compensating the plaintiff, in the same

manner, and to the same extent, as it might have used its old western wall, which the plaintiff tore down in order to build the party wall. A party wall can exist only by contract, statute or prescription. Lloyd on Building, sec. 185. In common law, when an adjoining owner built his wall upon the land of another, the part of the wall so built upon the land of the other became the property of the latter, and he might use it as he saw fit. It is only by contract, statute or prescription that the owner of a lot may build upon the adjoining owner's lot and use that part of the wall as and for the support of the building. Therefore, the defendant had such right to use the party wall as he had at common law, except where restrained by the agreement made. The agreement made simply provided for payment by defendant when used for a building thereafter constructed by defendant. (3) Where A and B own adjoining lots, and where A has already a building on his own lot, and where B contemplates building on his lot, and an agreement is entered into to build a party wall, and where the agreement provides that A shall pay for his portion of the party wall when he uses it, for the erection of any building, and it is necessary to tear down one side of A's building in order to erect a party wall, A has the right to use such party wall without payment until he uses it in the erection of a new building. *Shaw v. Hitchcock*, 119 Mass. 254. The same principle is recognized in *Kingsland v. Tucker*, 115 N. Y. 578.

MACFARLANE, J.—Plaintiff and defendant were the owners of contiguous lots fronting each about sixty-five feet, on the south side of St. Charles street, in the city of St. Louis, and extending back south about one hundred and eleven feet to an alley. Previous to making the contract which is the basis of this suit, a three story

brick building, of the full width of the lot, and extending back to within about seven feet of the alley, stood upon defendant's lot. This building was leased and used as a gymnasium. The seven foot space between the building and the alley was occupied by one story structures. About forty feet on the east was constructed of brick, and used for an engine and boiler room, and the remaining portion, about twenty-five feet, on the west, and adjoining plaintiff's building, was built of wood and was used for storing coal. The first and second stories of the main building were, for the convenience of the gymnasium, used as one.

The plaintiff previously had a three story building covering his entire lot. On the dividing line of these lots there was no partition wall, but each building was supported by its own wall built wholly on the land of the respective owners. Plaintiff, with a view of erecting a seven story building on his lot had removed his building therefrom, and proposed to defendant the erection of a partition wall between their lots. Negotiations resulted in a written contract, dated July 31, 1888. This contract recited first the respective ownership of the contiguous lots, describing each; that plaintiff was about erecting upon his lot a storehouse building, seven stories in height above the basement and that it was desired by the parties that the east wall of said building so to be erected should be a party wall "and that the center line thereof should be coincident with the division line between the two adjacent lots," and, in consideration of the premises, it was agreed as follows:

"That Fox shall construct the east wall of his said proposed building at his own cost and expense, so that the center or middle line of said wall shall correspond and be coincident with the line dividing the lots aforesaid of the parties, and that said wall shall be of the

dimensions, materials and constructed in the manner following, viz.:" Then follow the specifications for building the wall, which was to extend the whole length of the line, to be of brick, twenty-five inches thick for a height of thirty-three feet, then up twenty-three inches thick for twenty-eight feet, thence up eighteen inches thick for twenty-six feet and thence up thirteen inches thick for the remaining distance. "One smoke flue to be built in said wall, and in every story to have a thickness of thirteen inches between flue and outside surface of wall; and no other flues, slots or chaces to be built or cut in the wall by said Fox."

These provisions were then agreed upon: "That the said wall, so constructed as aforesaid, shall be used in common by both of the parties hereto, and their respective heirs, successors or assigns, as a 'party wall' for the support of the said building, or any addition thereto, so about to be erected by said Fox, and of any building which said party of the second part, its successors or assigns, may, at any time hereafter, erect upon the premises so owned by it as aforesaid; provided, however, and said party of the second part stipulates and agrees, that whenever it shall make use of said 'party wall' as a wall, and for the support of any building which may hereafter be constructed on its said premises, it shall pay to the said Fox, or his assigns, before making such use thereof, the sum of three thousand and forty-four dollars and eighty cents ($3,044.80).

"It is further agreed that either of said parties, at his or its own cost and expense, may alter, tear down and rebuild, reconstruct or add to the said party wall, in the event the same be rendered necessary, at any time by fire, accident, casualty or decay; provided, however, that the party so doing the same shall give to the other party ten days' written notice of the intention so

to do, and shall hold the other harmless and indemnified against any loss or damage resulting therefrom.

"It is understood, however, by the parties hereto, that this agreement does not authorize said Fox to erect said wall, or in any manner to impair or affect the rights of the Missouri Gymnastic Society under its lease of the said premises owned by said party of the second part, during the unexpired term of said lease, without consent thereto of said lessee being first obtained by said Fox."

The suit was upon this contract. The petition charged that plaintiff had built the wall according to agreement, and without, in any manner, impairing or affecting the rights of the Gymnastic Society, the tenants of defendant. "That in constructing said wall the plaintiff left openings therein for the joists or timbers of the building on defendant's lot occupied by said Missouri Gymnastic Society; and with the knowledge and consent of said Missouri Gymnastic Society, and of the defendant herein, inserted the joists or timbers supporting the said roof and building of said Missouri Gymnastic Society, and then and now owned by the defendant, the Mission Free School.

"That thereafter, the said defendant, did, by its agents and employees, erect a new brick building on the rear of its said lot, and in such erection did make use of said party wall, as a wall, and for the support of such new brick building; and by its agents and employees did reconstruct the old building on said premises owned by it and formerly occupied by the said Missouri Gymnastic Society and in such reconstruction did make use of said party wall, as a wall, and for the support of said reconstructed building. Plaintiff further states that in reconstructing the said old building, the said defendant, by its agent and employees, 'anchored' or 'tied' the walls of said reconstructed

building into the said party wall, for the purpose of obtaining support for said reconstructed building; and said reconstructed building is now sustained and supported, in whole or in part, by said party wall. And plaintiff further alleges that said party wall is now being used, in whole or in part, by the said defendant or its agents and employees as a party wall, and for the support of the said new brick building aforesaid and for the support of said reconstructed building, which latter, plaintiff avers, is to all intents and purposes a new building within the meaning and purview of said contract."

Judgment was prayed for $3,044.80 and interest. The answer was a general denial. On the trial the execution of the contract, and the proper construction of the wall according to contract, was not called in question.

It was shown that defendant's old wall was taken out, in order to make way for the party wall, and the building was properly supported until attached to the party wall which thereafter supported it. The third story of the south end of defendant's building was of corrugated iron, the first and second stories were of brick, but were cracked and weak. The first, or north wall, from about six feet east of the party wall, was cracked from the top, down perpendicularly to the base stone of the lower window. This crack was from a half to three-fourths of an inch in width and in consequence the wall leaned toward plaintiff's lot. When the party wall was completed, the outside, which became the inside wall of defendant's building, presented the usual appearance of a rough outside brick wall. The Gymnastic Society occupied defendant's building for two years after the wall was built after which it was rented to A. C. Wickham for a bakery and restaurant for a term of ten years. The tenant was authorized to make

permanent improvements and additions and to make repairs on the premises at his own expense.

Wickham proceeded to make repairs and improvements on the property in order to adapt it to his proposed uses. In order to repair the crack in the front wall he began at the cornice of the building, at the top of the wall, and removed the wall, down to the base stone of the lowest window near the sidewalk. This left a portion of the wall standing between the breach thus made and Fox's party wall. He took off the top of that portion of the wall, down to a level with the top of the highest window, leaving an open space just below the cornice, over to the party wall. He then rebuilt the breach up to the top of that window, and up to the open space running over to Fox's wall, and then built a solid wall across the breach above the window to the party wall. He then cut out a portion of the party wall sixteen inches one way and twenty inches the other. The depth of this incision is not shown by the evidence. In this incision was carried the top of Wickham's new wall just beneath the cornice with cemented bricks, where it was held. He plastered the party wall from the ceiling to the floor. The plaster had a white finish. He placed and supported wainscoting on this wall, the full length of the room. He hung gas fixtures and coat and hat racks on it, and fastened to it brackets underneath the girders to give the room an oval and dome-like appearance at the ceiling. He constructed a partition across the building in front of the cross wall, which was sustained by being nailed to the party wall.

He took out, entirely, about thirty feet of the north wall, leaving three or four feet next to Fox's wall to serve the purpose of a pier. Across this opening from this pier, he threw a girder, to support the brick wall above, so as to leave an open space underneath where

there had been previously the solid wall.  He removed the old frame coal house altogether, and rebuilt the wall of the old boiler house, which had been in part torn down by the gymnastic society in order to remove their boilers.  He then built a brick wall from the west end of this reconstructed wall of the boiler house, along the alley to Fox's party wall, and there dovetailed it with cement joints into the interstices of the rubblestone work of Fox's foundation, up to the top of that foundation.  There he lapped his brick wall over onto the top of the foundation of the party wall, which here was an inch and one-half to two inches wider than the party wall; thus presenting a shelf or shoulder of that width upon which he rested and supported his brick wall.  Above the foundation of the party wall, this brick wall was joined and bonded to the party wall by cement.  The party wall inclosed and formed the west end of this building, which but for the party wall would have been open.  A new gravel roof was placed on this building and made water-tight against Fox's party wall by the application of tar paper.  These are the facts plaintiff's evidence tended to prove as set up in appellant's statement.

At the close of the evidence offered by plaintiff the court directed the jury to return a verdict for defendant. Plaintiff took a nonsuit, and, after an ineffectual motion to set aside the same, appeals to this court.

The contract is the basis of plaintiff's action, and his right to recover must be found therein.  The question then is, was there evidence introduced on the trial which tended to prove that defendant made use of the party wall, as a wall, for the support of a building thereafter constructed on the premises by him or by his permission.  Plaintiff argues, *first*, that the use of the party wall in support of the old building was equivalent to the construction of a new building within the

spirit of the contract; *second*, that the new uses to which the wall was applied by defendant in the construction of his building was a use as a party wall, and defendant is bound by such use to the same extent as he would have been had the use been to support a new building; and, *third*, that the construction of the coal house and its support by the party wall was the construction of a building within the express terms of the contract.

I. We are of the opinion that the contract clearly contemplated that the party wall should be used in the support of the old building. The agreement must be interpreted by the condition of the property at the time it was made. At that time defendant had on his premises a complete building supported by its own four walls. The east wall was on the line of his own property. Under the contract the party wall, one-half of which was required to be on defendant's land, would necessarily occupy the space of the east wall of defendant's building, and required its entire removal. Defendant's building would, therefore, have been left entirely without support on that side, unless it was attached to the party wall. The contract provided that the erection of the party wall should, in no manner, impair or affect the rights of the tenants then occupying defendant's building. These facts plainly imply that the new wall should be used as a party wall for the old building, and that, too, without charge, until another building should be constructed on the premises. This was also clearly the construction given to the contract by the parties themselves. In building the party wall, the old building was built into and attached to it, and it was thereby supported and no claim for compensation was made. The plain interpretation of the contract, therefore, is, that defendant should have the use of the wall for the support of his

old building and should incur no liability until he thereafter constructed a building upon the premises. We find that like construction has been given a similar agreement under like circumstances. *Shaw v. Hitchcock*, 119 Mass. 254.

Though, in the absence of a contract, the use of the wall for the support of the old building might, from the conduct of the parties, imply an agreement to pay a proper proportion of the cost thereof, no such implication can be raised under this contract which expressly provides the condition upon which payment can be demanded.

II.   There can be no doubt, under the terms of the contract, that the wall built by plaintiff, became, as soon as completed, a party wall for the support of the building erected by him, and defendant had no right to make any use of the portion, situate on his land, which would impair its strength and efficiency for that purpose. The contract created in each of the parties reciprocal easements in the wall when built. As has been said, "the idea of reciprocity pervades the whole contract" and neither party can use the wall in such a manner as would interfere with the proper and effective use by the other. *Harber v. Evans*, 101 Mo. 665.

While this idea of mutuality of benefit and of right applies to the wall itself as it gives support to the respective buildings, it does not prevent the parties from using the surface of the walls in such manner as the business, comfort or taste of each may require, so long as its efficiency, as a support, is not impaired. If business uses required shelving to be attached to the wall, or if comfort or taste require that the surface be plastered or painted, or that pictures be hung upon it, the mutual rights of the parties in the wall would not suffice to prevent these improvements or ornamentations so long as they did not materially weaken

the support. In other words "one of the joint owners of a party wall can do any act concerning it which he desires, so long as he does not injure the property of the other." Lloyd's Law of Building & Buildings, sec. 185.

If, as held in the preceding paragraph, the parties intended that the wall should support defendant's old building, in lieu of his wall, which was necessarily removed, then it became a party wall, to all intents and purposes, for the support of the old building, and defendant had the right, without liability, to make all reasonable uses of the old building. If by improper use plaintiff's rights were interfered with, or affected, he would have to look for redress outside of the contract. It necessarily follows that defendant had also the right to make necessary repairs on its building without incurring liability under the contract. No one could reasonably contend, that an owner could not repair one wall of his building because another wall thereof was a party wall.

Aside from this, making repairs on an old building is a very different thing to constructing a building. The latter implies the erection of a new building. In the same clause and sentence of the contract in which the word constructed is used, the parties also use, as synonymous thereto, the word erected, which leaves no doubt or ambiguity as to what is meant. That the repairs to the wall of the old building were made in such a manner as to give the repaired wall support from the party wall, does not affect the construction of the contract. It is evident that defendant at the time it made the contract had determined upon no time for rebuilding, and that it also contemplated continuing the use of the old building. The right to make necessary repairs must be implied from these circumstances.

III. But it is insisted that tearing away the wooden

coal house on the seven foot space back of defendant's main building, and making, in its place, a one story brick structure, for use as a coal house, and lapping the brick over the footings of the stone foundation, joining the wall thereof to the party wall, and "dovetailing it with cement joints into the interstices of the rubblestone work" was the construction of a building within the meaning of the contract.

The use of a party wall for the support of a building thereafter to be constructed was what defendant contracted for, and until it did so use it no liability was incurred. The price to be paid for such use was over $3,000. An independent, separate wall for the coal house could have been made at the trifling cost of a few dollars. The wall of the coal house was not built into the party wall, though doubtless it received support from it. The contract says that defendant shall be liable to pay "whenever it shall make use of the party wall, as a wall, and for the support of any building which may hereafter be constructed on the premises." We think the contract should be given a reasonable construction, and not one to which no reasonable business man would have consented. It might be insisted by defendant that the words "as a wall," used in the contract meant that the use of the entire length and height of the wall was intended. Such construction would be absurd. On the other hand a contention that the contract means any use of the wall, in the construction of any building, however insignificant, would be equally absurd. There are no express words which require the adoption of either of these unreasonable constructions. The language of the contract is broad enough to admit of a reasonable interpretation. The wall for thirty-three feet in height was twenty-five inches thick and cost proportionally. A substantial building at the time covered the whole of defendant's

lot except seven feet in the rear. When the parties speak of a building, hereafter to be constructed, can there be a doubt that they had in mind the construction of a new building, in whole, or in part upon the site of the old one, and such as would require the support of a substantial wall? The erection of a substantial building which receives support from the party wall, is what the parties manifestly contemplated. *Elliston v. Morrison*, 3 Tenn. Ch. 280.

We do not think the improvements and repairs made upon the premises amount to the construction of a building thereon, within the meaning of the terms of the contract or the intention of the parties. Judgment affirmed. All concur, except BARCLAY, J., who is absent.