# CHARLESTON.

A. W. COX DEPARTMENT STORE *v.* J. W. SOLOF

(No. 5920)

Submitted April 20, 1927.    Decided April 26, 1927.

1. PARTY WALL—*Where Building is Owned in Separate Halves, and Owners Agree That Party Wall Then Partially Built up in Center of Building (Dividing Line of Ownership Being in Center of Wall) May be Extended Upward by Either Owner, at Any Time, and Other to Pay One-Half Cost Thereof For Such Portions as He May Elect to Use, Join to or Own; Afterwards Owner Constructs Wall and Other Uses it For Resting Joists of His Floors Thereon, He Has Elected to Use and Own One-Half of Wall so Used, Cannot Escape Stipulated Contribution of Cost of Wall on Theory He is Entitled to Same or Equivalent Support for Floors as He Had When Purchased, and Without Cost.*

   Where a building is owned in separate halves, and the owners agree that a party-wall then partially built up in the center of the building (the dividing line of ownership being in the center of the wall) may be extended upward by either owner, at any time, and the other to pay one-half the cost thereof for such portions as he may elect to use, join to or own; and afterwards one owner constructs the wall and the other uses it for resting the joists of his floors therein, he has elected to use and own one-half of the wall so used, and cannot escape the stipulated contribution of the cost of the wall on the theory that he is entitled to the same or equivalent support for his floors as he had when he purchased, and without cost.   (p. 495).

2. SAME—*Such Agreement Must be Construed With Reference to Conditions in and Construction of Building at Time Party-Wall Agreement Was Made.*

   Such agreement must be construed with reference to the conditions in and the construction of the building at the time the party-wall agreement was made.   (p. 498).

Error to Circuit Court, Kanawha County.

Action by A. W. Cox Department Store against J. W. Solof. Judgment of Nil Capiat was rendered for defendant. Plaintiff brings error.

*Reversed; judgment here for plaintiff.*

*Payne, Minor & Bouchelle,* for plaintiff in error.
*Leo Loeb* and *Robert H. C. Kay,* for defendant in error.

LIVELY, JUDGE:

Plaintiff in error, A. W. Cox Department Store Company, sued defendant, J. W. Solof, for $2,226.87, one-half of the cost of a party-wall built by the former in the building formerly known as the Loewenstein Building, facing Capitol Street in the City of Charleston. The court sitting in lieu of a jury found for defendant, and a judgment of nil capiat was rendered, from which this writ was awarded.

The controversy is based on a deed from the Loewenstein Realty Company to J. W. Solof, dated November 1, 1916, by which Solof obtained title to one-half the lot and building facing 76 feet and 6 inches on Capitol Street, the dividing line running from Capitol Street straight through the middle of the wall which separated the part then occupied by the Cox Department Store from that part formerly occupied by another tenant. The portion of the lot and building thus granted to Solof was that portion "which lies on the northerly side of a straight line running through the center of the brick wall on the northerly side of the store occupied by Cox Department Store, which line extends from Capitol Street to the alley in the rear." That portion of the deed out of which this controversy springs relates to the dividing wall in the building, and is as follows:

> "It is mutually agreed that the center wall dividing the Loewenstein Building in two parts, one part being conveyed to the said J. W. Solof, and the other part being retained by the party of the first part, shall be a party-wall, for the benefit of both parties, and it is agreed that either party or his vendees shall have the right at any time to extend

the said party-wall backward toward the alley in the rear of said lot, and also to build the said wall higher. And the other party to this conveyance, or his vendee in ownership, shall have the right to build to, use, join on to and own one-half of said party-wall for any distance upward or backward, he may elect, upon the payment to the other party constructing said extension, or his vendees, one-half of the actual value of so much of said extension of said wall as the said party may build to or use, at the time of so building to or using said extension.

"And in the event that said parties hereto, or their vendees, cannot agree as to the value of so much of said party-wall as each is required to pay for, by the terms of this agreement, then said value shall be determined by arbitration in the usual manner."

Later plaintiff became the owner in fee of the southern half of the building and lot by deed from the Loewenstein Realty Company.

When the parties obtained their respective deeds the brick center wall in the building was built up from the basement to the second floor only and separated the store-rooms on the first floor. The building was then, as now, five stories high, and the stories above the store-rooms on the first floor were rented as offices. The wall beginning at the front part of the building was 17 or 18 inches thick for a short distance (about 7 feet), and from there to the rear of the building was 12 to 13 inches thick. The second floor rested on this wall. Above the second floor the building was partitioned by a 2x6 inch frame, lathed and plastered on both sides, sitting flush with and over on the Cox side a distance of 17 feet from the front, where it made a sharp angle and extended into the Cox side 4 feet, thence back toward the rear for about 17 feet when it angled to the center line, thus making an offset of approximately 4x25 feet on the Cox side, in which space the stairways to the upper stories on the Cox side were constructed, and in which access was had to the elevator which was on the Solof side. This arrangement was found on each of the upper

stories.  After Cox purchased in 1917 the party-wall back of this offset made by the 2x6 partition was built up through the building (about 1918), and is a thirteen-inch wall, sitting equally on the Cox and Solof lots.  There is no controversy about that part of the wall (separating building in the rear portion).

The cause of the litigation was brought about by a building up of the party-wall in the front part of the building so as to eliminate the 2x6 partition on the Cox Side, as well as to save the space taken up by the offset around the elevator and stairs on the Cox side.  Cox proposed to build up the party-wall in the front part, and did so, thus eliminating the space made by the offset for the stairs and access to the elevator. He had constructed a new elevator on his side of the wall and a new stairway.  The net space saved to him by this change on the four floors was about 200 square feet, and there was a saving of $2.40 per thousand on the fire insurance rate on the entire building and its contents.

It appears that when Cox purchased about 1917, he remodelled the 4th and 5th floors, eliminated the offices thereon, and abandoned the use of the old elevator; and a new elevator was installed on his own side.  The building upward of the party-wall in the front portion of the building, and from which the litigation springs, necessarily eliminated the 2x6 frame partition on the Cox side, thus saving the space, and substantially reducing the insurance rate on the entire building and its contents.  How did the erection of this portion of the party-wall affect Solof?  What benefit did he derive, or was he damaged?  The joists of his floors extended over the dividing line and received support by resting on the 2x6 partition on the Cox side.  That was the condition when he bought, and he was satisfied with it and desired no change therein, especially if it cost him money.  At the time Cox proposed to build the wall, Solof had rented his half of the building to a tenant for a long term, and he took the position that he would derive no benefit from the proposed wall, would get no increased rent, and his tenant only would derive benefit from a saving of insurance premiums.  So when Cox

desired to build the wall and notified Solof, the latter refused to agree to pay any of the expense, for the reasons above stated—it would be no pecuniary benefit to him. Cox could not destroy Solof's supports for his floors, and upon Solof's refusal to pay for any part of the wall, he proposed to build a false wall on Solof's side for the support of his joists, but Solof objected thereto and insisted that if Cox disturbed his present support in any way, he must provide for and place his joists in the wall to meet the underwriter's requirements, as being the minimum requirement for leaving his supports in as good condition as they were before. Cox then proceeded with, the work, built the wall at an expense of $4,453.74, properly protecting Solof's floors by resting the joists thereof in the wall in the manner required by the underwriters; and then instituted this suit for one-half of the above sum. Solof had demanded that the joists should extend into the wall not less than four inches in accordance with the underwriter's requirements, and they were so placed. Newberry, Solof's tenant, was remodelling the Solof portion of this building and had employed W. A. Abbitt to do the work; and while that work was in progress Cox contracted with Abbitt to build the party-wall upward. By building the wall during the remodelling of the Solof side it would save about $1,000.00. The time was propitious for building the wall at a minimum expense.

It is the contention of defendant, and the lower court so held, that Solof could not be deprived of the supports for his floors, and therefore could rely upon the implied condition in the grant to him that he should have continued and uninterrupted enjoyment of the building as it was when he bought it, and it was the duty of Cox to preserve the supports to the floors, thus preserving the status quo; and if he (Cox) desired the space( in all amounting to 400 square feet) which was useless to him by reason of the partition being four feet over the line on his part of the building, he must make the change at his own expense. On the other hand, plaintiff insists that the party-wall agreement controls; that defendant has made use of the wall and elected to do so when he gave

plaintiff notice to rest the joists of his floor four inches or more in the wall as the minimum requirement for removing his joists from the 2x6 partition four feet over on plaintiff's lot.

Both parties insist that the party-wall agreement must be interpreted in the light of the condition of the property at the time the agreement was made. *Cabot* v. *Clarksburg Light & Heat Co.*, 102 W. Va. 572, 135 S. E. 666. That is the general rule and should be applied here. It can scarcely be questioned that the agreement related to the brick wall in the center of the building, in the center of which wall the division line ran from the front and extended in a straight line back to the alley; nor can there be any doubt that either party, at any time, could extend this wall backward toward the alley or upward, and the other upon joining or building thereto, or using any of the wall so constructed, which he might elect to join and use, should pay one-half the cost of that portion of the wall to which he joined or which he used. The construction placed upon this agreement by the lower court takes from the operation of this agreement that part of the wall which Cox has now built upward. There was no party-wall above the first floor. To hold that the 2x6 frame partition situate on each of the upper floors and four feet over on the Cox lot was a party-wall would be to give half ownership to Solof in a wall on the Cox land. If this partition could be deemed a party-wall within the meaning of the contract, then there could be no extension of it upward, for it appears from Abbitt's testimony, and he is an expert builder of long experience, that it would be impracticable and dangerous to extend that partition upward into another story. Indeed, he says another story would hardly be safe by using the present 13-inch brick wall now in the center of the building, and would violate the present building ordinance of the city. There is nothing in the agreement which takes from the operation thereof any portion of the party-wall. Could Solof have prevented Cox from building upward this part of the wall or any part of it? He has conceded that right, but says that the other part of the agreement about bearing one-half of the

expense does not apply.  He would give vitality to only one part of the agreement, devitalizing the other part on the claim that the status quo must be preserved; or if changed for his benefit, he is exempt from expense.  The parties knew the condition of the property at the time; that the partition was four feet beyond the dividing line, and not over the 13-inch brick wall.  They contracted that either party could at any time extend that brick wall upward, thus necessarily requiring removal of the Solof joists from resting on that partition; and yet they provided for joint ownership of that wall so constructed, upon payment of one-half the expense of that part of the wall which was to be used jointly.  They expressly provided that the then status of the building could be changed, and made no provision for exemption from expense because of that change, except for such portions of the wall which the other party elected not to use.  The contract must be construed as a whole.  If Solof has not elected to use this wall, it is difficult to see how he will ever elect; and to hold that he has not elected would take this part of the wall from the operation of the contract.  Such a construction would make Cox voluntarily increase the value of Solof's property; for it is apparent that the wall decreases the fire hazard to the entire building.  The value is added, although it may be that Solof will not reap immediate returns therefrom because of his lease contract with Newberry.  It would add to the sale value.  And when the lease expires the value will be there.  If the parties intended that Solof should be exempt from contribution because of removal of his joists from the support of the partition beyond the property line (and they knew that removal would occur when the wall was built upward), they made no provision for such exemption, and the exemption can be written in only by implication.

There can be no question that Solof had an easement in the use of the partition on the other side of the dividing line for the joists of his floors to rest upon, as long as that partition remained.  Generally the grant of an easement by implication arises where the owner of two tenements has constructed them so that the benefits to one are derived from the other, and sells

one of them, the purchaser takes the property with the benefits and burdens attached to it by reason of its arrangement of construction with the other property. The presumption is that the parties contracted with reference to the condition of the property at the time of sale. The easement thus passing by implication to the purchaser must be open, visible, apparent and continuous. *Scott et al.* v. *Beutel*, 23 Gratt. (Va.) 7, and cases there cited. But by the agreement made in the instant case it was contemplated and understood that this support, this easement, would be changed, and the parties agreed upon the terms of that change, one of which was contribution to the expense incident thereto. We are of the opinion that Solof is not relieved from contribution on the theory that he had support for his joists at the time he purchased and therefore his easement would continue unimpaired even though the party-wall was afterwards constructed as agreed. The terms of the contract are contrary to this theory, and we cannot change them by implication.

The case of *Shaw* v. *Hitchcock*, 119 Mass. 254, cited by defendant to sustain the proposition that an adjoining owner is not liable for costs of a *new* party-wall, where he does not subject the same to any use which he could not have made of the *old* wall prior to its removal, is easily distinguishable from the instant case, for the court there interpreted the agreement to mean that the defendant was to contribute when he should use the wall for the *erection* of any building, and it was not shown that defendant had made use of the wall in the *erection* of a building. Likewise, in *Fox* v. *Mission Free School*, 120 Mo. 349, the contract said that defendant should pay if he used the wall for any building thereafter to be constructed, and the court held that it did not apply to the buildings already on defendant's land which were afterwards repaired and improved. Other cases cited which were influenced by statutory enactment in respect to party-walls, and in the absence of express agreement between the parties, have little application here. This case is governed by the express terms of the agreement in the light of the condition of the subject-matter of the contract at the time it was executed.

The judgment of nil capiat will be set aside, and the judgment entered here for plaintiff against defendant for $2,226.87, with interest thereon from July 30, 1925.

*Reversed; judgment here for plaintiff.*