Richard C. COMPTON and Therese A. Compton, Appellants,

v.

Stanley CAIN and Cheryl L. Cain, Respondents.

No. 17757.

Missouri Court of Appeals, Southern District, Division Two.

April 27, 1992.

John L. Woodward, Woodward and Associates Law Firm, P.C., Cuba, for appellants.

James A. Broshot, Mazzei and Broshot, Charles R. Leick, of Counsel, Steelville, for respondents.

MONTGOMERY, Judge.

This is a quiet title action concerning 1.1 acres of a 3.8 acre tract of real property in Crawford County, Missouri. Plaintiffs, Richard C. Compton and Therese A. Compton (Comptons), sued Stanley Cain and Cheryl L. Cain (Cains).

Comptons' petition asked the court to declare them the owners of the entire 3.8 acre tract. Cains' answer admitted (a) Breo Realty and Development, Inc. (Breo) conveyed the 3.8 acre tract to Comptons by a deed recorded July 29, 1976, (b) that the

Bank of Sullivan on January 21, 1977, foreclosed on a deed of trust given by Breo describing, among others, Lots 1 through 5, inclusive, of Block G in Woodland Heights Subdivision, (c) a subdivision plat of Block G[1] was recorded on August 30, 1977, and (d) the Bank of Sullivan on January 7, 1985, conveyed, among others, Lots 1 through 5 of Block G to Cains. Further answering, Cains pleaded that they and their predecessors in title had adversely possessed Lots 1 through 5 of Block G since January 1977 during which time "they have maintained the property and paid the taxes on the same."

After a bench trial, judgment was rendered in favor of Cains declaring that they "are vested with the fee simple title to ... Lots 1, 2, 3, 4 and 5 of Block "G"...." Comptons appeal presenting two points relied on. We affirm.

■■■ Our review of this court-tried case is governed by Rule 73.01(c), Missouri Rules of Civil Procedure (1991), as construed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). The decree of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. Neither party requested findings of fact or conclusions of law, and the trial court made none. Under those circumstances, all fact issues are considered as having been resolved in accordance with the result reached. Rule 73.01(a)(2). Furthermore, the "judgment is presumptively correct and the burden is on the appealing party to demonstrate error." *Steen v. Colombo*, 799 S.W.2d 169, 173–74 (Mo.App. 1990). "[I]f the trial court does not state what law it applied the judgment will be affirmed if it is supported by any reasonable theory." *Id.* at 174.

In addition to the facts admitted in the pleadings, certain other undisputed facts necessary for disposition of this appeal must be noted. A chronological statement of the events creating this dispute is helpful.

*1964* Persons named Rohrers owned all the disputed property and certain adjoining property. They began to develop Woodland Heights Subdivision. Certain building and use restrictions were recorded. These restrictions stated that the owners were in the process of subdividing land into a subdivision to be known as Woodland Heights Subdivision. The restrictions stated:

"[T]he ... owners will shortly hereafter cause to be recorded a plat of said subdivision ...; and will thereafter from time to time record additional sheets of said plat which will continue and enlarge said subdivision, so as to include all that part of said Section 19, which is located North and West of New U.S. Highway 66, ... and all of said lands when subdivided will be known as Woodland Heights Subdivision."

*1970* The plat of Block C is recorded.

*1971* The Rohrers conveyed to Breo three parcels of land in Section 19, including the 3.8 acre tract. The Rohrer deed refers to Blocks A, B, and C and subjects the entire conveyance to the restrictions noted above.

*1972* A plat of the addition to Block B was recorded along with plats of Blocks D and E.

*1973* Breo gave a deed of trust to the Bank of Sullivan which described portions of Woodland Heights Subdivision including:

Lots 1, 2, 3, 4 and 5 of Block "G"; all in Woodland Heights Subdivision which is a part of the South Half of the Northwest Quarter and the Northwest Quarter of the Southwest Quarter of Section 19, Township 40 North, Range 2 West, in Crawford County, Missouri.

*1976* Breo conveyed to Comptons the 3.8 acre tract in Section 19 by a metes and bounds description.

*January 1977* The 1973 deed of trust was foreclosed and the Bank of Sullivan received a Trustee's Deed covering Lots 1 through 5 of Block G.

---

**1.** For brevity, we will omit further reference to Woodland Heights Subdivision following lot numbers and blocks. No other subdivision is involved in the case.

*August 1977* The plat of Block G was recorded.

*1985* Cains received a warranty deed from the Bank of Sullivan which included Lots 1 through 5 of Block G.

The 3.8 acre tract is undeveloped. No structures have ever been erected on the property. The parties agree that 1.1 acres of the 3.8 acre tract overlaps a corner of Woodland Heights Subdivision. The 1.1 acre tract was apparently platted as Lots 1 through 5 of Block G. Obviously, the problem arose when Breo gave the Bank of Sullivan a deed of trust in 1973 which described property that remained unplatted on the record until August 1977. Between the deed of trust and the foreclosure of January 1977 Breo conveyed to Comptons the 3.8 acre tract described by metes and bounds.

Cains' theory of their adverse possession is based, in part, on evidence which follows. Both parties presented evidence they paid taxes on the property described in their respective deeds. The Bank of Sullivan paid taxes from 1977 through 1984 on the lots conveyed to Cains. Commencing in 1985 Cains paid taxes. However, Comptons only paid taxes on 3.8 acres until 1985 when they were notified by the assessor's office that their tract was assessed as being 2.7 acres. Mr. Compton called the assessor's office and was told that reassessment had occurred in Crawford County and some tracts were found to be different from their previous records. Mr. Compton pursued the matter no further. Thereafter, Comptons paid taxes on a 2.7 acre tract.

Mr. Compton testified he did nothing to the property after the purchase date. In the fourteen years prior to trial, he admitted that he had gone out and looked at the property "maybe half a dozen times." He did drive by the property on the adjoining highway on a fairly regular basis. During those occasions he noticed in "the first ten years or so someone was keeping it mowed and cleared." He also saw "possibly a flea market on the front" and something like a mini bike track on the property. No one ever asked or received permission from Comptons to use the property. Although Comptons never posted any signs on the property, Mr. Compton testified he saw six small "no trespassing" signs on the property. He did not know who placed the signs on his property but apparently made no further investigation.

Mr. Cain testified he lived in the Woodland Heights Subdivision, and prior to 1985 the Bank of Sullivan always took care of the property by mowing and brushhogging. The Cains bought the disputed tract in 1985 after the Bank of Sullivan did nothing to keep motorcyclists off the property. Mr. Cain then erected "no trespassing" signs, mowed the property and planted about 500 trees on the property.

■ Because Comptons' second point is dispositive of the case we need not discuss the first point. Comptons claim that Cains failed to establish that they and their predecessor in title adversely possessed the subject real estate for ten consecutive years because the evidence was limited to sporadic acts of mowing and payment of taxes for the first eight years.

In order to establish title by adverse possession the "[c]laimant must show possession that is 1) hostile and under a claim of right, 2) actual, 3) open and notorious, 4) exclusive, and 5) continuous for a period of ten years." *Green v. Lange,* 797 S.W.2d 765, 767 (Mo.App.1990). Furthermore, "claimant has the burden of proving by a preponderance of the evidence the existence for the entire statutory period of each and every element of adverse possession." *Id.*

Clearly, Cains' use and possession of the property did not commence until 1985. Thus, Cains must tack their possession to that of the Bank in order to establish the required ten-year time period. "[W]here there is the requisite relationship between the parties, tacking of possession is allowed." *Teson v. Vasquez,* 561 S.W.2d 119, 127 (Mo.App.1977). Comptons do not contest the relationship between Cains and the Bank to allow tacking. They simply say the actions of the Bank from 1977 to 1985 are insufficient to allow Cains' use of that time period to establish title by ad-

verse possession. For that reason our opinion will focus on the disputed time period. We assume that Comptons concede the possession of Cains after 1985 was sufficiently adverse since no argument is advanced to the contrary.

Comptons specifically argue the evidence failed to show the Bank's possession was (1) actual, (2) open and notorious, (3) hostile or under a claim of right,[2] and (4) continuous. Comptons rely solely on *Teson.* Their reliance is misplaced.

According to *Teson,* "actual possession" results from a claimant showing "his present ability to control the land and his intent to exclude others from such control." *Id.* at 126.

> Any combination of continuing acts of occupying, clearing, cultivating, pasturing, erecting fences or other improvements, and paying taxes on the land serves as evidence of actual possession, but is not conclusive.

*Green,* 797 S.W.2d at 768; *Teson,* 561 S.W.2d at 126. Color of title[3] is not an element of adverse possession, "but it serves to extend actual possession of some portion of the land claimed to constructive possession of the whole tract described in the instrument providing the basis for color of title." *Id.*

Applying the above principles, we determine the Bank did actually possess the land for eight years. Mr. Compton testified in "the first ten years or so" he noticed someone kept the property "mowed and cleared." Since Comptons bought the property in 1976 his testimony could only refer to the entire period in which the Bank claimed ownership of the property. In addition, it is undisputed the Bank paid taxes on the property from 1977 to 1985. The combination of mowing, clearing and payment of taxes is clear evidence of actual possession. *Green,* 797 S.W.2d at 768. Such actions by the Bank further demonstrate an ability to control the land and to exclude others from control. The evidence

sufficiently shows the Bank's actual possession.

Next, *Teson* indicates "open and notorious possession" is shown by proof that "the claimant's occupancy was conspicuous, widely recognized and commonly known." *Id.* at 127. The reason for this requirement is "to give the owner cause to know of the adverse claim of ownership by another." *Id.*

Comptons cannot forcefully argue they were in the dark about a potential adverse claim of another. Mr. Compton had actual knowledge of mowing and clearing of his land for the first ten years of his ownership. Common sense would indicate a good samaritan tires of such work long before the expiration of ten years. In addition, Mr. Compton saw a flea market and a mini bike track on his property but investigated none of these unusual activities. The evidence shows the Bank's possession was open and notorious.

Thirdly, according to *Teson,* possession which is "hostile or under a claim of right" occurs when the possession is "opposed and antagonistic to the claims of all others, i.e., the claimant must occupy the land with the intent to possess it as his own and not in subservience to a recognized, superior claim of another." *Id.* at 127.

Payment of taxes, mowing and clearing of the property clearly show the Bank's intent to possess the property as its own and not in subservience to a recognized superior claim of another. The Bank's actions were hostile and under a claim of right.

Finally, under *Teson,* the element of "continuous possession" is satisfied if the occupancy is "without lapse, for the entire statutory period." *Id.* at 127.

Comptons characterize the Bank's activities as intermittent and sporadic. This argument fails because Mr. Compton noticed mowing and clearing for the first ten years

---

2. The terms "hostile and under claim of right" are used conjunctively in some cases and disjunctively in others. Because the parties make no distinction in their argument we do not discuss any difference.

3. Comptons do not dispute the existence of color of title in this case created by the trustee's deed and subsequent deed to Cains.

of his ownership. His testimony made no mention of sporadic or intermittent mowing and clearing. Mr. Cain testified, prior to 1985, the Bank always took care of the property by mowing and brushhogging. Therefore, the Bank's possession was continuous and there was no evidence to the contrary.

■ The trial court did not state what law it applied granting the judgment in favor of Cains. In such circumstance, we must affirm the judgment if it is supportable by any reasonable theory. *Steen*, 799 S.W.2d 169. Ample evidence supports the judgment on the theory of adverse possession vesting title in Cains.

Judgment affirmed.

SHRUM, P.J., and MAUS, J., concur.