**Louann THOMAS,**
**Plaintiff/Respondent,**

v.

**B.K.S. DEVELOPMENT CORP., et al., Defendants/Appellants.**

**No. ED 79593.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 4, 2002.

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

**56**

Brian Harvell & Steven E. Spoeneman, St. Louis, MO, for appellant.

Donald E. Heck, Clayton, MO, for respondent.

WILLIAM H. CRANDALL, JR., Presiding Judge.

Defendants, B.K.S. Development Corporation, et al., appeal from the judgment of the trial court vesting title to certain real property in plaintiff, Louann Thomas, under the doctrine of adverse possession. We affirm.

The evidence established that at all times pertinent to this litigation, plaintiff, Louann Thomas (hereinafter Thomas), resided on lot 25 of Country Club Estates in Jefferson County. In February 1985, Thomas and Gerald Thomas, as husband and wife purchasers,[1] signed a contract with B.K.S. Development Corporation, as seller, for the purchase of lots 22, 23, and

---

1. At all times pertinent to this litigation, Thomas and Gerald Thomas were not husband and wife. Gerald Thomas was not a party to the action below and is not a party to this appeal.

24 in Country Club Estates. The lots were mainly rural woodland. The contract, titled "SALE CONTRACT (Installment Payments)," (hereinafter contract) provided for a total sale price of $4,500.00, with $1,500.00 payable at the time of contracting and the balance payable as follows: $1,500.00 payable in August 1985 and $1,500.00 payable in January 1986. The seller agreed to deliver to the purchaser warranty deeds as follows: lot 24 to be deeded to purchaser upon January 1985 closing; lot 23 to be deeded to purchaser upon July 1985 closing; and lot 22 to be deeded to purchaser upon January 1986 closing. The contract required the purchaser to pay the taxes on the lots after 1984, and permitted the seller to rescind the contract and to keep any payments if the purchaser failed to pay the taxes.

Thomas made two payments of $1,500.00 under the contract, one in February 1985 and another in November 1985. Despite her repeated requests, however, she did not receive the deeds for lots 23 and 24. She did not make the last payment of $1,500.00, due in January 1986; and did not receive a deed for lot 22. She also did not pay the taxes on the lots. Defendants paid the taxes on the lots.

In 1999, Thomas brought the present action against the record owners, B.K.S. Development Corporation, and others, requesting that title to lots 23 and 24 be vested in her on the theory of specific performance of the sales contract (Count I), adverse possession (Count II), and resulting trust (Count III). The trial court dismissed counts one and three of the petition and proceeded to trial on the theory of adverse possession. At trial, Thomas's evidence was that her activities on lots 23 and 24 included, but were not limited to, the following: bringing in fill, laying gravel for a parking area, putting up a barbed wire fence, keeping horses, putting up a shed, storing construction equipment, putting in roads for motorcycles, cutting wood, cutting the grass, installing lights, and using the land for various recreational activities. The trial court found in favor of Thomas. The court found that Thomas, acting under color of title, did "continuously occupy lots 23 and 24 . . . for more than the requisite 10 years in a hostile, actual, open and notorious manner." The court concluded that Thomas acquired title to lots 23 and 24 and that defendants had no interest in them. Defendants appealed.

 Our review of this case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The person claiming by adverse possession has the burden of proving by the preponderance of evidence the existence for the entire statutory period of each and every element of adverse possession. *Teson v. Vasquez*, 561 S.W.2d 119, 125 (Mo.App.1977). The person must show that possession was actual, hostile and under a claim of right,[2] open and notorious, exclusive, and continuous possession of the property for ten years. Failure to prove any one element prevents the ripening of title by adverse possession. *Id.*

In their first point, defendants contend that the trial court erred in not granting their motion to dismiss Thomas's adverse possession claim for failing to state a claim upon which relief can be granted.

 A motion to dismiss for failure to state a claim is solely a test of the adequacy of the plaintiff's petition. The law gen-

---

**2.** The terms "hostile and under claim of right" are used conjunctively in some cases and disjunctively in others. Because the parties make no distinction in their argument, we do not discuss any difference. *Compton v. Cain*, 829 S.W.2d 75, 78 n. 2 (Mo.App. S.D. 1992).

erally favors trial on the merits and the criteria for judging the sufficiency of petitions have been developed to promote this purpose. *Prindable v. Walsh*, 69 S.W.3d 912, 914 (Mo.App. E.D.2002). On appeal we must allow the pleadings their broadest intendment, treating the facts alleged as true, and must determine whether the petition invokes substantive principles of law. *Id.* A petition cannot be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of the claim that would give a right to relief. *Id.*

■ Defendants first argue that Count II of the petition did not allege all the elements of adverse possession. For adverse possession, the occupancy of the property must be: (1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for ten years prior to the commencement of the action. *Strubberg v. Roethemeyer*, 941 S.W.2d 557, 560 (Mo.App. E.D. 1997). Thomas's petition, filed in 1999, alleged that she "openly, notoriously and adversely occupied Lots 23 and 24 of Country Club Estates from 1982 to the present and as a result has acquired ownership by adverse possession." Although she did not use the precise language of each element of adverse possession, we liberally construe her averments and find that she adequately pleaded a cause of action for adverse possession.

■ Defendants next allege that Thomas's petition failed to state a claim because it did not contain a legal description of the property at issue. The petition alleged that "Lots 23 and 24 of Country Club Estates are parcels of land located in Jefferson County, Missouri as is described in Book 57, Page 6 of the Jefferson County Records...." Here, Thomas described the property as recorded on a plat with Jefferson County and by lot number. Her identification of the disputed land was sufficiently ascertainable and recognizable to withstand a motion to dismiss.

The trial court did not err in refusing to dismiss Thomas's adverse possession count. Defendants' first point is denied.

■ In their second point, defendants contend that the trial court erred in rejecting their affirmative defense of laches, because Thomas failed to bring her action in a timely manner.

■ Laches is the neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. *Ewing v. Ewing*, 901 S.W.2d 330, 333 (Mo. App. W.D.1995). Mere delay in asserting a right does not of itself constitute laches; the delay involved must work to the disadvantage and prejudice of the defendant. *Id.* Equity does not encourage laches and the doctrine may not be invoked to defeat justice but only to prevent injustice. *In re Estate of Remmele*, 853 S.W.2d 476, 480 (Mo.App. W.D.1993).

Here, under the terms of the sales contract, Thomas took possession of lots 23 and 24 and paid for both lots in 1985. Her cause of action in adverse possession did not arise until 1995, when she had been in possession of the lots for a period of ten years. She brought the present action in 1999. Defendants offered no evidence that they suffered any prejudice as a result of the four-year delay. The trial court did not err in rejecting defendants' defense of laches. Defendants' second point is denied.

In their third point, defendants charge error in the trial court's reliance on the doctrine of adverse possession to vest title to lots 23 and 24 in Thomas, because they allege that she failed to establish the requisite ten years of continuous possession.

They argue that Thomas breached the contract by failing to make the final payment thereunder and by failing to pay the taxes; and that therefore the ten years did not commence running, because they were under no obligation under the contract to tender title to the lots until Thomas made the last payment on lot 22.

■ We disagree with defendants' interpretation of the sales contract. The trial court found that the sales contract permitted Thomas to claim possession of lots 23 and 24 under a "color of title" theory. This comported with Thomas's interpretation of the contract, which was that in 1985, when she made two payments of $1,500.00 each for lots 23 and 24, she took possession of the lots and defendants were obligated to deliver the deeds to those lots to her. Whether a contract is ambiguous is a question of law. *Blackman v. Blackman*, 767 S.W.2d 54, 59 (Mo.App. W.D.1989). In determining whether a contract is ambiguous, the court must consider the whole instrument and the natural and ordinary meaning of the language. *Id.* The mere fact that the parties disagree on the subject does not render the document itself ambiguous. *Id.* The test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person. *Id.* Where the contract is ambiguous, use of extrinsic evidence for interpretation is proper; the resolution of the ambiguity is a question of fact. *Id.* Because the contract was ambiguous, the trial court was free to interpret the contract for sale of the lots as vesting color of title in Thomas from the time she made payments under the contract in 1985 and was entitled to receive the deeds.

■ Color of title is not an element of adverse possession, but it serves to extend actual possession of some portion of the land claimed to constructive possession of the whole tract described in the instrument providing the basis for color of title. *Compton v. Cain*, 829 S.W.2d 75, 78 (Mo. App. S.D.1992). Section 516.040 RSMo 2000 provides: "The possession, under color of title, of a part of a tract or lot of land, in the name of the whole tract claimed, and exercising, during the time of such possession, the usual acts of ownership over the whole tract so claimed, shall be deemed a possession of the whole of such tract." In order to establish color of title, some writing should be shown purporting to convey land and to describe the same. *Henderson v. Town and Country Grocers of Fredericktown, Missouri, Inc.*, 978 S.W.2d 850, 855 (Mo.App. S.D.1998). It is only when the adverse claimant, in actual possession of part of the land, seeks to draw to it the whole, that he must show color of title to the whole. *Id.*

■ There is some disagreement as to whether color of title may be evidenced by a contract for sale of land. *Compare* 3 Am.Jur.2d *Adverse Possession* section 155 (1986) and *Long v. Pawlowski*, 131 Mont. 91, 307 P.2d 1079, 1081 (1957) (contract for the sale of land does constitute color of title) *with* 2 C.J.S. *Adverse Possession* section 93 (1972) (contract for purchase of land does not constitute color of title). Yet, we need not decide that issue in the case before us, because Thomas fully performed under the terms of the contract with regard to lots 23 and 24 by paying for them. The only act necessary under the contract was for defendants to execute the deeds to those lots, conveying title to Thomas. After payment of the purchase money, a contract for sale of land may constitute color of title sufficient to support adverse possession. 2 C.J.S. *Adverse Possession* section 93 (1972); *see also Car-*

rington v. McNeil, 58 A.D.2d 719, 396 N.Y.S.2d 286, 288 (N.Y.App.Div.1977).

Here, in 1985, Thomas entered into possession of lots 23 and 24 and paid for them under the terms of the contract for sale. When defendants failed to execute the deeds to lots 23 and 24, Thomas possessed the lots under color of title. Furthermore, if her possession of any portion of the lots was adverse to the claims of defendants for ten years, then her possession of part of those lots was extended to the entire lots described in the sales contract. Thus, we must decide if Thomas's possession was adverse for a period of ten years.

The first element of adverse possession is actual possession. "Actual possession" results from a claimant showing her present ability to control the land and her intent to exclude others from such control. Compton, 829 S.W.2d at 78. Any combination of continuing acts of "occupying, clearing, cultivating, pasturing, erecting fences or other improvements, and paying taxes on the land" serves as evidence of actual possession, but is not conclusive. Id.

Applying the above principles, we determine that Thomas did actually possess the land. The combination of bringing in fill, laying gravel for a parking area, putting up a barbed wire fence, keeping horses, putting up a shed, storing construction equipment, putting in roads for motorcycles, cutting wood, cutting the grass, installing lights, and engaging in recreational activities was clear evidence of actual possession. See id. Such actions by Thomas further demonstrated an ability to control the land and to exclude others from control. The evidence sufficiently showed Thomas's actual possession of lots 23 and 24.

The next element is "open and notorious possession," which is demonstrated by proof that the claimant's occupancy was conspicuous, widely recognized and commonly known. Id. The reason for this requirement is to give the owner cause to know of the adverse claim of ownership by another. Id. The trial court's interpretation of open and notorious may take into account the rough and wooded nature of the land. Moore v. Dudley, 904 S.W.2d 496, 498 (Mo.App. E.D.1995).

Defendants cannot forcefully argue that they were unaware of a potential adverse claim of another. Defendants testified that they observed paths beaten down on the lots. The evidence was that the lots were mowed and trash was picked up. Common sense would indicate that a good samaritan tires of such work long before the expiration of ten years. See Compton, 829 S.W.2d at 78. The evidence showed that Thomas's possession was open and notorious.

The third element of adverse possession is possession which is "hostile or under a claim of right." It occurs when the possession is opposed and antagonistic to the claims of all others, or when the claimant occupies the land with the intent to possess it as his own and not in subservience to a recognized, superior claim of another. Id. Thomas's various activities on the property clearly showed her intent to possess the property as her own and not in subservience to a recognized superior claim of another. Thomas's actions were hostile and under a claim of right.

The fourth element is exclusive possession, which means that the claimant holds the land for himself and not for another. Witt v. Miller, 845 S.W.2d 665, 667 (Mo.App. E.D.1993). Thomas testified that she and her family used the lots for various purposes and that she and her

family were the only people to use the lots. She also testified that she was the only person to maintain the lots. Thomas's possession of the lots was exclusive.

██ The last element is "continuous possession," which is satisfied if the occupancy is without lapse, for the entire statutory period. *Id.* Thomas's activities were neither intermittent nor sporadic, but had been ongoing and visible since Thomas took possession under the sales contract in 1985. Thomas's possession was continuous for ten years.

Ample evidence supports the court's determination that title was vested in Thomas on the theory of adverse possession for ten years under color of title. Defendants' third point is denied.

██ In their fourth point, defendants aver that the trial court erred in vesting title to lots 23 and 24 in Thomas, because Thomas's "claim of ownership to said real estate is limited to portions of land over which [she] proved actual dominion." We disagree. As discussed in point three, under the "color of title" doctrine, actual possession of some portion of the land extends possession to the whole tract described in the instrument providing the basis for color of title. Section 516.040. Even if Thomas's acts did not extend to the entire area of the lots claimed by her, when the acts are combined with color of title, they constituted possession of the whole of the lots. *See Moran v. Roaring River Dev. Co.*, 461 S.W.2d 822, 832 (Mo. 1970).

In addition, the identification of lots 23 and 24 was sufficiently ascertainable. The boundaries of the lots were contained in the plat, as well as the dimensions, property lines, and shapes of the lots. Thomas testified that she knew the boundaries of her lots. Defendants' fourth point is denied.

In their fifth point, defendants assert that the trial court erred in admitting into evidence a certified copy of the Country Club Estates Subdivision Plat that was recorded in the Office of the Recorder of Deeds of Jefferson County, Missouri. In their sixth point, defendants contend that the trial court erred in vesting title to the lots in Thomas, because there was insufficient evidence to support a finding of adverse possession. We have reviewed these points on appeal and find that the trial court's decision on these issues was supported by substantial evidence and was not against the weight of the evidence. No error of law appears. These points are denied. Rule 84.16(b).

The judgment of the trial court is affirmed.

KATHIANNE KNAUP CRANE and ROBERT G. DOWD, JR., JJ., concur.