CONTEMPORARY MANAGEMENT, INC., et al., Respondents,

v.

**1007 OLIVE PARTNERSHIP, et al., Appellants.**

**No. 53551.**

Missouri Court of Appeals, Eastern District, Division Five.

Oct. 11, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 16, 1988.

---

Julius H. Berg, Clayton, for appellants.

Morris J. Levin, S. Sheldon Weinhaus, Mark S. Packer, St. Louis, for respondents.

CARL R. GAERTNER, Judge.

This is an appeal from the judgment entered after a non-jury trial of consolidated law suits between owners and occupants of adjoining properties in downtown St. Louis. On the one side are Contemporary Management Inc., lessee under a fifty year lease of the property known as 1010 Olive Street, and members of the Mandell and Pohrer families, the owners of this property (herein after collectively referred to as plaintiffs). On the other side are members of the Abrams family, d/b/a 1007 Olive Partnership, owners of the property known as 1006–1008 Olive Street (herein after defendants).

In 1904, pursuant to a recorded agreement executed by the predecessors of the parties, a party wall was erected astraddle the entire 107 feet of the boundary line between these two lots. The subsurface foundation of this wall extends twenty-nine inches into each lot. The above surface wall is thirty inches wide at its widest point, fifteen inches into each lot. The wall served as the western wall of the building at 1006–1008 and the eastern wall of 1010 until 1937 when the latter structure was razed. 1010 Olive has since been used as a surface parking lot. Plaintiff Contemporary plans to construct a parking garage on 1010 Olive street and has demanded that defendants remove air-conditioning units,

air vents and windows protruding through the western wall and extending into the air space above the western foundation. Defendants claim to be the owners of the entire wall including the air space above the western foundation and thus object to Contemporary's planned garage construction insofar as it may encroach upon the western side of the wall and air space above the foundation. Contemporary initially filed an action against the defendants seeking a declaratory judgment that the 1904 party wall agreement was in full force and effect and to permanently enjoin defendants from claiming ownership of the wall to the exclusion of plaintiffs' rights under this agreement. The Abrams family partnership filed an action against Contemporary and others seeking to enjoin the planned construction of the garage, damages and a declaratory judgment that they had acquired ownership of the western half of the wall by virtue of abandonment or adverse possession. The two actions were consolidated and tried to the court without a jury. The trial court found in favor of plaintiffs, declared the 1904 agreement to be in full force and effect and permanently enjoined defendants from interfering with plaintiffs rights and interests in the wall. Defendants appeal. We affirm.

We are indebted to the trial judge for his distillation of the testimony of numerous witnesses and a myriad of documentary evidence into lucid and succinct findings of fact. On appeal defendants do not challenge these factual findings nor do they contend such findings are without evidentiary support. Rather, they seek reversal based upon an argument that the trial court erroneously declared and applied the law. Defendants contend the evidence establishes that they have acquired ownership of the entire wall by adverse possession or by abandonment by the plaintiffs and their predecessors of any claim of right or interest in the wall and, alternatively, that plaintiffs are equitably estopped from interfering with continued use of the wall by defendants and their tenants.

Before addressing each of these contentions it is appropriate to set forth some basic principles of the law relating to party walls. The sharing of a common wall upon the boundary line dividing adjoining properties does not create any form of joint or common ownership by the adjoining land owners. Each retains title to the half of the wall upon his land and gains an easement for support in the half on his neighbor's land. *State v. Murray,* 630 S.W.2d 577, 581 (Mo. banc 1982). The parties to the 1904 party wall agreement, to whose rights and obligations the present land owners have succeeded, "each became the owner in severalty of his own part of the wall and the land on which it stood, but the title of each was qualified by a cross-easement in favor of the other." *Reinhardt v. Holmes,* 143 Mo.App. 212, 127 S.W. 611, 614 (1910). This easement merely prevents each owner from doing anything on his side of the wall that would impair the support furnished by the wall to the building on the adjacent lot. *Fox v. Mission Free School,* 120 Mo. 349, 25 S.W. 172, 174 (1894). All that may be abandoned in such a situation is the easement of support, not title to the property itself. 69 C.J.S. *Party Walls* § 11(a) (1951). This follows from the proposition that an interest in real property may not be abandoned. *Powell v. Bowen,* 279 Mo. 280, 214 S.W. 142, 144 (Mo. banc 1919). Some authorities hold that even when one of the buildings is destroyed, the easement is not abandoned if the party wall still stands. 69 C.J.S. *Party Walls* § 11(b) (1951); 59 Am.Jur.2d *Party Walls,* § 30 (1987).

Consequently, even if the evidence supported defendants' claim of abandonment, a conclusion contrary to the finding of the trial court, the result would not be to confer ownership of the entire wall upon defendants; it would merely prevent plaintiffs from asserting any right to use the wall for support. However, plaintiffs have no such intention. The evidence shows plaintiffs plan to construct a free standing structure contiguous to the western face of the wall and above the extension of the foundation of the wall into its property. Plaintiffs' claim against defendants is not predicated upon interference with the easement of support; it is based

on allegations of continuing encroachment of air vents and air-conditioners into its side of the wall thus interfering with the full use of its own property. Defendants' claim based upon alleged abandonment is without merit.

We also find no merit in defendants' claim of ownership in the entire wall by adverse possession. To maintain an adverse possession claim, a party has the burden of proving all five elements: (1) Hostile possession under a claim of right; (2) Actual possession; (3) Open and notorious possession; (4) Exclusive possession; and (5) Continuous possession for a 10 year period. *Wilton Boat Club v. Hazell,* 502 S.W.2d 273, 276 (Mo.1973); *Rector v. Missouri Dept. of Natural Resources,* 685 S.W.2d 225, 227 (Mo.App.1984). The trial court found that defendants failed to meet this burden; specifically, defendants did not prove the elements of actual, hostile, or exclusive possession.

Actual possession requires that the claimant show his ability to control the land and his intent to exclude others from control. *Boeckmann v. Fitzpatrick,* 491 S.W. 2d 524, 527 (Mo.1973); *A. Charles Bussen Trust v. Kertz,* 723 S.W.2d 922, 927 (Mo. App.1987). If the conveyance from which claimant acquired title does not attempt to transfer the disputed property, claimant must show physical possession of the entire area at issue. *Bussen,* 723 S.W.2d at 927–28. The exclusive possession element is not fulfilled if both claimant and title holder jointly use the land. *Lohrmann v. Carter,* 657 S.W.2d 372, 377 (Mo.App.1983). Hostile possession requires that claimant occupy the land with the intent to possess it as his own and not recognize a superior claim of ownership. *Heide v. Sheeks,* 682 S.W.2d 877, 878 (Mo.App.1984). Consequently, permissive possession will not support a claim of adverse possession. *Oberg v. Alberswerth,* 592 S.W.2d 872, 875 (Mo. App.1980). If the claimant was initially granted permission to use the land, use will not become hostile for purposes of adverse

possession until claimant has brought his hostile intention home to the owner. *Eld v. Ellis,* 235 S.W.2d 273, 275 (Mo.1950); *Kammerer v. Cella,* 585 S.W.2d 552, 557 (Mo. App.1979).

■ The evidence presented at trial supports the trial court's finding that defendants failed to prove adverse possession.[1] The deed by which defendants claim title did not purport to convey the wall. The testimony of both plaintiffs' and defendants' predecessors shows at best a joint use of the wall and could support a finding that defendants' predecessors recognized the superior title of plaintiffs' predecessors. Jack Pohrer, one of the 1010 Olive owners, testified that his family made full use of the wall consistent with their parking operation and there is no evidence that any owner of 1006–1008 Olive objected to this use until the present dispute erupted.

The trial court's finding that the cutting of the openings in the wall for windows, vents, and air conditioning units was permissive is amply supported by the evidence. This further militates against defendants' claim of hostile possession. We find no error in the trial court's conclusion that defendants failed to prove the essential elements of a claim of adverse possession.

Finally, defendants argue that plaintiffs are "equitably estopped" from attempting to reclaim their abandoned interest in the wall and from revoking the license permitting the installation of windows and openings for vents and air-conditioners in the wall. Other than a suggestion in defendants' motion for summary judgment and in their proposed findings of fact and conclusions of law that plaintiffs should be estopped from claiming an interest in the wall because of abandonment, the issue of possible estoppel was not asserted in the trial court. The trial court expressly noted the use of the wall over the years by the 1010 owners in affixing wooden bumpers, lights, electrical conduits, and signs to the

---

**1.** Because defendants had only held title for four years at the time this action commenced, they cannot meet the ten year statutory period without either tacking onto their predecessors'

last six years of ownership or proving that their predecessors at some point possessed adversely for the full ten years.

wall. Moreover, the evidence showed that any use of the western half of the wall by 1006–1008 owners and tenants for openings or signs was by permission by the 1010 owners. Such evidence refutes any contention of abandonment.

Defendants' contention that plaintiffs should be estopped from revoking the license permitting the defendants to encroach through the western half of the wall appears for the first time in defendants appellate brief. Estoppel must be pleaded and cannot be raised for the first time on appeal. *Passer v. U.S. Fidelity and Guaranty Co.*, 577 S.W.2d 639, 646 (Mo. banc 1979); *Shearin v. Fletcher/Mayo/Assoc., Inc.*, 687 S.W.2d 198, 201 (Mo.App.1984). An appellate court will not convict a trial court of error on an issue which was not presented to it for decision. *Ozark Mountain Timber Products, Inc., v. Redus*, 725 S.W.2d 640, 645 (Mo.App.1987).

Defendants argue that even if they did not plead equitable estoppel, they presented evidence on that issue at trial and thus the theory is deemed pleaded under Rule 55.23. That rule is inapplicable, however, when the evidence is also relevant to the issues identified in the pleadings, and there was no indication at trial that the evidence was presented to support a new issue. *U.S. Fidelity Guaranty Co. v. Houf*, 695 S.W.2d 924, 928 (Mo.App.1985); *Gee v. Gee*, 605 S.W.2d 815, 817 (Mo.App. 1980). Defendants have not identified any evidence which was relevant only to equitable estoppel nor have they indicated any point during trial when they specifically identified this theory. The cases defendants cite in support are inapposite as they involve situations where the unpleaded theory was "hotly contested" during trial. *Arrington v. Loehr*, 619 S.W.2d 888 (Mo. App.1981); *Woolfolk v. Jack Kennedy Chevrolet Co.*, 296 S.W.2d 511, 516 (Mo. App.1956). Because equitable estoppel was not presented to the trial court, we may not address it on appeal. *McGlothin v. Eidelman & Traub, Inc.*, 733 S.W.2d 851, 853 (Mo.App.1987).

Moreover, the evidence shows that the defendants' predecessor and the tenants of the 1006–1008 building acknowledged when openings in the wall were made that the permission to do so was terminable and that windows might have to be closed and vents and air-conditioners removed if a structure was erected at 1010 Olive Street. A party claiming equitable estoppel must plead and prove (1) an admission, statement or act that is inconsistent with a subsequently asserted claim; (2) action based on this admission, statement, or act; (3) injury to such actor if the first party repudiates the admission, statement or act. *Peerless Supply Co., v. Industrial Plumbing and Heating Co.*, 460 S.W.2d 651, 665–66 (Mo.1970); *Patterson v. State Board of Optometry*, 668 S.W.2d 240, 243 (Mo.App.1984). There is nothing inconsistent in the granting of a license terminable at will and the later revocation of that license. The fact that defendants' predecessors or their tenants expended money for improvements which they knew they might some day have to remove does not constitute the type of injury or undue hardship which necessitates protection by a court of equity.

Accordingly, the judgment of the trial court is affirmed.

SATZ, P.J., and DOWD, J., concur.