**Robert A. DOBBS, et al.,
Plaintiffs/Respondents,**

v.

**Robert KNOLL, et al.,
Defendants/Appellants.**

**No. ED 79798.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 22, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 2002.

Application for Transfer Denied
Jan. 28, 2003.

Lawrence G. Gillespie, Clayton, MO, for appellant.

Terry A. Parkinson, St. Louis, MO, for respondent.

WILLIAM H. CRANDALL, JR., Presiding Judge.

Defendants, Robert Knoll, et al., appeal from the judgment of the trial court vesting title to certain real property in plaintiffs, Robert A. Dobbs, et al., under the doctrine of adverse possession. We affirm.

The evidence established that plaintiffs were husbands and wives, Robert A. Dobbs and Melvia Dobbs, Preston Koprivica and Iris Rose Koprivica, and Peter Walker and Kathleen J. Walker. Each of the couples owned and resided in homes situated on three separate lots in the Kehrs Mill Farm Subdivision (hereinafter subdivision), located in Chesterfield, St. Louis County, Missouri. When the subdivision was originally developed, common ground identified as "Community Area and Easement" was included in the plat and described in the subdivision trust agreement and indentures. The indentures also provided that all subdivision residents could use the common ground, subject to the certain rules and regulations. Some of the common ground was located immediately behind plaintiffs' lots along the north boundary lines of their respective lots, between their lots and Kehrs Mill Road.

Plaintiffs brought a quiet title action against defendants, the subdivision trustees. In three separate counts, they sought title to the parcels of common ground located behind their respective lots. The plaintiffs claimed title to the common ground under the doctrine of adverse possession.

The Dobbses purchased lot 37 in the subdivision in 1988. It was known as

15723 Cotting Court. When they bought the property, they were told that their lot was enclosed by the fence that was in place at the time. They maintained the area inside the fence, including, but not limited to, cutting the grass, landscaping, spraying, and removing trees. They treated all of the property inside the fence as their own. In 1992, the trustees informed them that the fence was outside the boundaries of their lot and encroached onto the common ground along the north edge of their lot. The trustees requested that they move the fence back to their property line. They refused. In Count I of this action, the Dobbses want title to the strip of common ground enclosed within their fence quieted in them on the basis of adverse possession.

The Koprivicas purchased lot 39, commonly known as 15719 Cotting Court, in 1973. They were the original owners and were aware that property contiguous to their lot was common ground from the time they moved onto the property. Yet, they treated that property as part of their own backyard. Among other things, they planted grass seed, trees, and a vegetable garden. They watered the area and installed a sprinkler system in 1989. They stacked wood and allowed their grandchildren to play in the area. They landscaped the area to such an extent that access to their property from Kehrs Mill Road was difficult. In Count II of this action, the Koprivicas requested the trial court to quiet title to that portion of common ground in them on the basis of adverse possession.

The Walkers purchased lot 38, known as 15721 Cotting Court, in 1974. Their lot was fenced along their property lines.

Yet, from the beginning, they treated the common ground in the back of their lot, yet outside their fence, as their own. Among other things, they put in grass, gardens, railroad ties, a vegetable garden, trees, a birdbath, and a bird feeder. They cut the grass in that area. They planted a row of holly bushes, which made access to the common ground difficult. In Count III of this action, the Walkers requested the trial court to quiet title to the disputed property in them on the basis of adverse possession.

The trial court found in favor of plaintiffs and vested title to the area of common ground adjacent to their respective lots in them. The court concluded that plaintiffs met the elements for adverse possession with respect to the parcels of common ground contiguous to their respective lots.

Defendants' sole point on appeal is that the trial court erred in determining that plaintiffs were vested with title to the common ground at issue, because plaintiffs did not prove by the preponderance of the evidence the elements of adverse possession.

Our review of this case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The person claiming by adverse possession has the burden of proving by the preponderance of the evidence the existence for the entire statutory period of each and every element of adverse possession. *Thomas v. B.K.S. Development Corp.*, 77 S.W.3d 53, 57 (Mo.App. E.D.2002). The person must show that possession was actual, hostile and under a claim of right,[1] open and notorious, exclusive, and continuous possession of the property for ten years. *Id.* Failure to

---

1. The terms "hostile and under claim of right" are used conjunctively in some cases and disjunctively in others. Because the parties make no distinction in their argument, we do not discuss any difference. *Compton v. Cain*, 829 S.W.2d 75, 78 n. 2 (Mo.App. S.D. 1992).

prove any one element prevents the ripening of title by adverse possession. *Id.*

■■■ The first element of adverse possession is actual possession. "Actual possession" results from a claimant showing the present ability to control the land and the intent to exclude others from such control. *Id.* at 60. Any combination of continuing acts of "occupying, clearing, cultivating, pasturing, erecting fences or other improvements" on the land serves as evidence of actual possession, but is not conclusive. *Compton v. Cain,* 829 S.W.2d 75, 78 (Mo.App. S.D.1992). Possession is actual depending on the nature and location of the property and the uses for it. *Conaway v. Fauller,* 972 S.W.2d 442, 444–445 (Mo.App. E.D.1998).

The evidence supported a finding that plaintiffs actually possessed the parcels of common ground in dispute. The common ground was located in a residential subdivision and abutted each of plaintiffs' properties. Plaintiffs maintained the sections of common ground adjacent to their respective lots. They cut the grass and planted bushes and trees. They treated the common ground as if it was part of their own backyards. In particular, the Dobbses' fence enclosed not only their lot but also the common ground located at the back of their lot. The Dobbses refused to move the fence to their property line when the trustees requested and the trustees never attempted to remove the fence. The Koprivicas planted a vegetable garden and installed a sprinkler system on the common ground. They stacked wood and allowed their grandchildren to play there. As to the Walkers, although their fence ran along their property line in the backyard, they treated the common ground beyond the fence as their own. They put in gardens, railroad ties, a vegetable garden, a birdbath, and a bird feeder. In addition, they planted a row of holly bushes, which prevented access to the common ground between the holly bushes and their fence. Plaintiffs' acts with regard to the common ground also exhibited their intent to exclude others from the area of common ground at issue. The evidence was sufficient to establish the element of actual possession of the common ground.

■■■ The next element is "open and notorious possession," which is demonstrated by proof that the claimant's occupancy was conspicuous, widely recognized, and commonly known. *B.K.S. Development,* 77 S.W.3d at 60. The reason for this requirement is to give the owner cause to know of the adverse claim of ownership by another. *Id.*

■■ Here, plaintiffs exhibited acts of ownership over the common ground adjacent to their respective properties. Open and notorious is "satisfied by visible acts of ownership exercised over the premises." *Witt v. Miller,* 845 S.W.2d 665, 668 (Mo. App. E.D.1993). Maintaining and improving the common areas immediately behind their respective properties and making access difficult because of landscaping or impossible because of a fence were sufficient acts to satisfy the element of open and notorious. *See Conaway,* 972 S.W.2d at 445.

■■■ The third element of adverse possession is that the possession is "hostile or under a claim of right." The definition of hostile includes antagonism to the claims of others with the intent to possess the land as the possessor's own. *Witt,* 845 S.W.2d at 668. But, hostility does not imply animosity. *Id.* All the plaintiffs testified that it was their intent to possess the disputed property as owners when they conducted various activities on the property and treated the property as part of their own backyards. It is the intent to

possess that controls, not the intent to take the property away from the true owner. *Id.* Plaintiffs' actions with regard to the disputed property were hostile.

The fourth element is "exclusive possession," which means that the claimant holds the land for himself and not for another. *B.K.S. Development,* 77 S.W.3d at 60. Plaintiffs testified that they excluded people from the disputed property; and that their plantings, and in the Dobbses' case, the fence made access onto the common ground difficult. In addition, sporadic use by others will not defeat a claim of adverse possession. *Conaway,* 972 S.W.2d at 445. Plaintiffs' evidence established that they exclusively possessed the common ground at issue.

The last element is "continuous possession," which is satisfied if the occupancy is without lapse, for the entire statutory period. Plaintiffs' activities on disputed property were neither intermittent nor sporadic, but. had been ongoing and visible since plaintiffs took possession of their respective properties: the Dobbses in 1988; the Koprivicas in 1973; and the Walkers in 1974. Plaintiffs' possession was continuous for ten years. Plaintiffs proved all of the elements of adverse possession for the prescribed 10–year period.

Nevertheless, defendants contend that plaintiffs' use of the property was merely "permissive" in that use of the common ground was granted to all property owners within the subdivision, even with regard to common ground adjacent to their respective properties. Defendants argue that permissive use will not support a claim of adverse possession, because it negates the element of hostile possession. *See, e.g., Brokhausen v. Waubansee,* 65 S.W.3d 598, 600 (Mo.App. S.D.2002).

Yet, use that is permissible in its inception can ripen into a prescriptive right if the claimant has made a distinct and positive assertion of a right hostile to the owner. *Timberlane Homeowners Ass'n, Inc. v. Brame,* 79 Wash.App. 303, 901 P.2d 1074, 1078 (1995). In *Timberlane,* the court rejected a permissive use argument similar to the one in the instant action. The Timberlane subdivision homeowners' association brought an action against the owners of a lot adjacent to the association-owned common area, seeking to quiet title after the lot owners refused to remove a fence and a concrete patio, both of which encroached onto the common area. *Id.* at 1076. The court acknowledged that the inference of permissive use was applicable to a situation in which it was reasonable to infer that the use was permitted by neighborly acquiescence. *Id.* at 1078. The court pointed out that the lot owners' use was originally permissive, in that as members of the homeowners' association, they had a nonexclusive easement right to the common area. *Id.* Yet, the court concluded that the construction of a fence and a concrete patio on the common ground "far exceeded a reasonable exercise of that easement right." *Id.* The court stated that the use of the common area by the lot owners demonstrated that they exercised dominion over the disputed land in a manner consistent with actions a true owner would take. *Id.*

Here, plaintiffs exercised dominion over the common ground adjacent to their properties consistent with actions a true owner would take. The Dobbses' fence enclosed the common ground located at the back of their lot. The Koprivicas landscaped, planted a vegetable garden, installed a sprinkler system, and stacked wood. The Walkers installed gardens, railroad ties, a vegetable garden, a birdbath, and a bird feeder, and planted a row of holly bushes, which hindered access to the common ground. Plaintiffs' use of the common

ground adjacent to their respective lots exceeded a reasonable exercise of their right to use the common ground.

 Defendants also claim that plaintiffs did not communicate their claim to the common ground adjacent to their properties until defendants received a letter in April 1998, which started the running of the ten-year period for adverse possession. We disagree. The open and notorious requirement of adverse possession can be met by showing the defendant's actual knowledge of a plaintiff's claim. *Kline v. Bourbon Woods, Inc.*, 684 S.W.2d 938, 940 (Mo.App.1985). Absent proof of actual knowledge, plaintiff must prove possession that is conspicuous, widely recognized, and commonly known. *Scott v. Rorebeck*, 766 S.W.2d 659, 664 (Mo.App.1989). Knowledge or notice in such cases has been held to mean knowledge of all that would be learned by reasonable inquiry. *Kline*, 684 S.W.2d at 940. In the instant action, plaintiffs' possession of the common ground and activities thereon were conspicuous, commonly known, and adverse to defendants' interests. Under these circumstances, notice was presumed and no further proof of notice was required.

There was ample evidence to prove the elements of adverse possession. The trial court did not err in determining that plaintiffs were vested with title to the common ground at issue. Defendants' point on appeal is denied.

The judgment of the trial court is affirmed.

SHERRI B. SULLIVAN, J. and GLENN A. NORTON, J., concur.