Melanie R. NEWBILL, Appellant,

v.

Margretta FORRESTER–GAFFNEY and Walker Gaffney, Respondents,

and

First National Bank of St. Louis and Ziercher & Hocker, P.C., Trustee, Defendants.

No. ED 85237.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 25, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 2005.

Application for Transfer Denied Jan. 31, 2006.

William E. McCurdy, Jr., St. Louis, MO, for Appellant.

William Arnold Hellmich II, St. Louis, MO, for respondents Margretta Forrester–Gaffney and Walker Gaffney.

Garry Lee Vincent, St. Louis, MO, for respondents First National Bank of St. Louis and Ziercher & Hocker, P.C.

MARY K. HOFF, Presiding Judge.

Melanie R. Newbill (Newbill), individually and in her capacity as trustee of the Melanie R. Newbill Revocable Trust (Trust), appeals from that portion of the judgment entered in favor of Defendants Margretta Forrester–Gaffney and Walker Gaffney (the Gaffneys), First National Bank of St. Louis, and Ziercher & Hocker, P.C., Trustee,[1] in Newbill's action to quiet title. Judgment affirmed as modified.

*Background*

Newbill and her former husband, James Brooks Newbill, purchased a home at 12 Lenox Place in the City of St. Louis in 1972. The Newbills divorced in 1990 and James Brooks Newbill conveyed his interest in the property to Newbill, who subsequently conveyed the property to the Trust. Newbill continues to reside at the property.

The Gaffneys purchased the property adjacent to Newbill's property, 10 Lenox Place, in January 2001. This dispute arose following the Gaffneys' decision to install a fence across a strip of land that lay between their driveway and Newbill's sun porch. Newbill initiated litigation to assert claims concerning, among other things, this strip of land. The fence, as installed, runs in an east-west direction beginning at the Gaffneys' residence, continuing across their driveway and across the disputed strip, and abuts (but does not touch) the concrete foundation of Newbill's sun porch.

Newbill's first amended petition set forth eleven counts: Count I—Quiet Title/Adverse Possession Against All Defendants; Count II—Prescriptive Easement on the Disputed Property Against All Defendants; Count III—Trespass Against Gaffneys; Count IV—Injunction Against Gaffneys; Count V—Quiet Title/Adverse Possession of Area B Against All Defendants; Count VI—Prescriptive Easement on Area B Against All Defendants; Count VII—Quiet title/Adverse Possession of Area C Against All Defendants; Count VIII—Quiet Title/Adverse Possession of Area D Against All Defendants; Count IX—Quiet Title/Adverse Possession of Area E Against All Defendants; Count X—Prescriptive Easement on Area E Against All Defendants; and Count XI—Quiet Title/Adverse Possession of Area F Against All Defendants.

Following a bench trial on July 14, 2004, the court entered judgment making specific findings of fact and conclusions of law. In its judgment, the court entered judgment in favor of Defendants and against Newbill on Counts I, II, III, IV, V, VIII, and IX. As to Count X, the court entered judgment in favor of Newbill, granting her a prescriptive easement in a parcel referred to as the "brick walkway" for the sole purpose of allowing Newbill to maintain or repair her home. With respect to

---

1. First National Bank of St. Louis and Ziercher & Hocker, P.C., Trustee, did not appear or participate at the trial below and have not filed briefs on appeal.

Counts VI and XI, the court entered judgment in favor of Newbill, granting her a prescriptive easement in the described property for the sole and limited purpose of a foundation for her sun porch and allowing for the eaves, gutter, and roof overhang on the porch. The court also entered judgment in favor of Newbill on Count VII, quieting title to the described parcel in Newbill subject to a prescriptive easement in favor of Defendants in the property situated adjacent to the Gaffneys' detached garage for the limited purpose of maintaining the garage. Additional facts will be developed throughout this opinion as needed for our analysis.

### Analysis

Newbill raises seven points on appeal, with numerous subpoints.[2] Much of Newbill's brief attempts to characterize the testimony of various witnesses and attacks credibility findings made by the trial court. For purposes of clarity, we decline to address Newbill's argument subpoint by subpoint. Instead, we shall address the issues as they relate to the trial court's determinations in a manner we find more conducive to analysis.

One of Newbills' claims of error addresses the trial court's adoption of the Gaffneys' findings of fact and conclusions of law. The remaining claims of error, including one concerning Newbill's trespass count, essentially concern two parcels of land owned by the Gaffneys: 1) the side yard, a strip of land lying between Newbill's house and the Gaffneys' driveway measuring approximately 11 feet wide and 61 feet long, which includes a small area occupied by Newbill's sun porch foundation and the eaves and gutters directly

above the foundation, as well as a brick walk edging the porch; and 2) a narrow wedge of land adjacent to the Gaffneys' garage measuring approximately 19 square feet.

In bench-tried cases, we affirm the trial court's decision unless its judgment is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

### *Seventh–Point—Adoption of the Findings of Fact and Conclusions of Law*

In her seventh point, Newbill claims the trial court erred in adopting verbatim proposed findings of fact and conclusions of law offered by the Gaffneys because the findings were not consistent with the actual facts and the conclusions of law were not sufficiently specific to permit meaningful review. She argues that it is not clear that the trial court carefully examined each cause of action and the evidence. We disagree. Given our standard of review, we find no inconsistencies between the trial court's findings of fact and the actual facts and have determined the legal conclusions were sufficiently specific to permit meaningful review. As a result, in this case, we find no error in the trial court's adoption of the proposed findings of fact and conclusions of law. *Investors Title Co. v. Chicago Title Ins. Co.*, 983 S.W.2d 533, 537 (Mo.App. E.D.1998). Point denied.

### *First Point—Adverse Possession of The Side Yard Strip, Including Brick Walk Area*

In her first point, Newbill argues the trial court erred in granting judgment for

---

2. We note that Newbill's brief is not in compliance with Rule 84.04. Notably, Newbill's first point contains subpoints (A) through (R) with sub-subpoints. The briefing deficiencies, particularly Newbill's Points Relied On, arguably, could justify dismissing this appeal. However, we will address Newbill's claims of error in an effort to achieve finality and to discourage further litigation between the parties.

the Gaffneys as to her claim for adverse possession of the side yard described in her petition, a strip of land lying between her house and the Gaffneys' driveway measuring approximately 11 feet wide and 61 feet long, because there was no substantial evidence to support the judgment, the judgment was against the weight of the evidence, and the trial court erroneously declared and applied the law.

▮ An individual claiming by adverse possession must prove by the preponderance of the evidence the existence of every element of adverse possession for the entire ten-year statutory period; failure to prove just one element is fatal to the claim. *Dobbs v. Knoll*, 92 S.W.3d 176, 180–81 (Mo.App. E.D.2002). Therefore, to succeed on such a claim, the plaintiff must demonstrate her possession was actual, open and notorious, exclusive, continuous, and hostile and under a claim of right. *Id.* at 180.

▮ In its findings of fact and conclusions of law, the trial court noted that the determinative issue regarding Newbill's claim to the side yard was whether Newbill's use and maintenance of the strip was "(a) hostile and under a claim of right; and (b) exclusive." The trial court concluded Newbill's use and maintenance of the strip was permissive. In reaching its determination, the trial court expressly found much of Newbill's testimony to be not credible, and correspondingly, specifically found witnesses testifying on behalf of the Gaffneys to be credible.

In the first point of her argument on appeal, Newbill states that the case before us is not one in which we must defer to the trial court's credibility determinations, specifically not as to the testimony of James Brooks Newbill. Newbill then proceeds in her sub-points and sub-subpoints to take exception to the trial court's findings.

We remind Newbill that we review court-tried cases under the standards set forth in *Murphy v. Carron*, 536 S.W.2d at 32. Acknowledging the trial court's superior ability to determine witness credibility, we defer to its findings of fact and view the evidence and all reasonable inferences most favorably to the trial court's decision. *Wallace v. Grasso*, 119 S.W.3d 567, 572 (Mo.App. E.D.2003). "Conflicts in the evidence were for the trial court to resolve, and the facts must be taken in accordance with the result reached." *Thomas v. King*, 160 S.W.3d 445, 448 (Mo.App. S.D. 2005). In accordance with these principles, we find the following facts determinative on the issue of permissiveness.

During trial, James Brooks Newbill testified that during the time he and Newbill jointly owned the property located at 12 Lenox Place, from 1972 to 1990, he understood that the side yard located between their house and the neighboring driveway was owned by their neighbors at 10 Lenox Place, the Torrences. He further testified that, sometime after he and Newbill purchased 12 Lenox Place they decided to sod their front yard. James Brooks Newbill then asked Mrs. Torrence if she would agree to him sodding from his front lot over to her driveway, an area which would include the north half of the side yard. Mrs. Torrence agreed to the sodding. Mrs. Torrence also agreed to caution her children about driving over the area in consideration of the expense the Newbills would incur in sodding that part of the Torrence's yard. After the sodding, the Newbills mowed and raked the side yard.

Subsequently, James Brooks Newbill decided to install a sprinkler system for the Newbills' yard. He spoke to Mrs. Torrence before he did so, and although he designed his system to sprinkle the area of Mrs. Torrence's side yard that he had

sodded, he was careful to ensure none of the piping or fixtures extended into her property.

Donald Torrence, Mrs. Torrence's son, also testified at the hearing. He lived at 10 Lenox Place from his birth in 1956 until approximately 1980. During that time, Donald Torrence knew that the side yard between the driveway of 10 Lenox Place and the Newbills' sun porch belonged to his family because his family had a framed copy of the property's survey hanging in their hallway. While he lived at 10 Lenox Place, Donald Torrence also mowed and raked leaves on the side yard.

The Torrences sold the property at 10 Lenox Place to Rhea and Cheryl Gustafson in 1996. Deposition testimony from the Gustafsons was read into the record during the hearing. The Gustafsons owned the 10 Lenox Place property until they sold it to the Gaffneys in December 2000. During this time, the Gustafsons understood that they owned the side yard between their driveway and Newbill's sun porch; the survey they received when they bought the house clearly indicated that the side yard was part of the 10 Lenox Place property.

After he and his family moved in, Rhea Gustafson and Newbill discussed the mowing of the sideyard. Rhea Gustafson gave Newbill permission to cut the grass on the front of the side yard when she cut her yard because it made sense for the adjoining areas to be cut at the same time and "made for a nice clean look[.]" Rhea Gustafson mowed the back area of the side yard to keep the underbrush down, raked and vacuumed leaves on the side yard in the fall, cut back ivy, picked up fallen sticks, and planted bulbs. He tried to grow grass on the back part of the side yard but was unsuccessful because of the shade. He hired a tree service to trim the trees in the side yard. When Newbill asked if she could trim the limbs of a tree in the side yard to prevent squirrels from jumping into her attic, Rhea Gustafson acquiesced.

In late fall of 2000, Newbill asked to buy the side yard before the Gustafsons sold their home. After Cheryl Gustafson told Newbill that they could not sell the side yard to Newbill because they had listed the entire property, Newbill commented that she hoped the new neighbors were nice and would let her continue to mow the front part of the side yard so that her yard would look nice.

Walker Gaffney (Gaffney) testified during the hearing. He and his wife purchased the house at 10 Lenox Place in January of 2001 and moved into the house the following March. They had a survey prepared in connection with the purchase and were familiar with the boundaries of the property.

After he and his family moved in, Gaffney began mowing the side yard and raking debris that fell from the trees planted there. Gaffney later noticed that Newbill's lawn service was mowing the side yard down to his driveway and informed its worker that he was mowing part of Gaffneys' property. Gaffney had a tree removed from the side yard because he determined it was undesirable. In a subsequent conversation he had with her, Newbill commented that she thought the removal was a good idea.

Later, Gaffney and his wife decided they wanted to install a new fence on their property. The existing fence was decrepit and unsightly, and they wanted to install the new fence closer to the front of their property to allow their children more play area and to make it more difficult for outsiders to access their backyard. Gaffney discussed his intention to fence the side yard with Newbill and told her he

would need to remove some of the bricks around her sun porch so that he could install the footing for his proposed fence. When Gaffney speculated as to the purpose for the bricks, suggesting it was perhaps to prevent run-off from splashing mud on the side of the house, Newbill said that she did not know why they were there. Gaffney showed Newbill how the fence would run from his house, across the driveway and the side yard, to the edge of Newbill's sun porch. Newbill told him she was sure anything Gaffney did would look nice. However, the following weekend, a man who identified himself as Newbill's boyfriend approached Gaffney as he was outside and told Gaffney that the fence was not going to work for Newbill.

Shortly after this conversation, Newbill talked to Gaffney about the fence and told him that she would be unable to access her sun porch to maintain it if he extended the fence across the side yard to the porch. Gaffney told her he would be happy to give her a key to the fence's gate and further suggested cutting a gate in the fence between the two property's backyards to allow access. Their conversation became increasingly heated. When Gaffney told Newbill that he did not think he needed her permission to build a fence on his property, Newbill told him she had a lawyer looking at the issue. Ultimately, for aesthetic reasons, the fence was built just a little forward of the location Gaffney originally showed Newbill.

■ Clearly, substantial evidence supports the trial court's determination that Newbill's use and maintenance of the side yard was permissive. Permissive use negates the element of hostility required for adverse possession. *Ross Farms, Inc. v. Moore*, 873 S.W.2d 308, 309 (Mo.App. S.D. 1994). Because failure to prove even one element is fatal to a claim of adverse possession, we conclude the trial court did not

err in granting judgment for the Gaffneys as to Newbill's claim for adverse possession of the side yard. Point denied.

### Fourth Point—Prescriptive Easement of Part of Side Yard

■ Newbill's fourth point on appeal claims the trial court erred in granting judgment in favor of the Gaffneys on her claim for a prescriptive easement on the side yard, including a brick walk adjacent to the sun porch. The determination that Newbill's use and maintenance of the side yard was permissive is dispositive of this point, as well. "Mere permissive use of land cannot ripen into an easement." *Carpenter–Union Hills Cemetery Ass'n v. Camp Zoe, Inc.*, 547 S.W.2d 196, 200 (Mo. App.1977). Point denied.

### Second Point—Adverse Possession of Small Strip by Brick Walkway

In her second point, Newbill claims the trial court erred in granting judgment for the Gaffneys on her claim for adverse possession of the small strip occupied by the brick walk area adjacent to Newbill's sun porch because there is no substantial evidence to support the judgment, it is against the weight of the evidence and the trial court erroneously declared and applied the law. As with the previous point, the trial court found that Newbill's use of this area (designated "Area E" in Count IX of Newbill's petition) was permissive and not hostile. Substantial evidence supports the trial court's finding. Point denied.

### Third Point—Adverse Possession of Area Occupied by Newbill's Sun Porch Foundation, Eaves, and Gutters

In her third point, Newbill claims the trial court erred in granting judgment for the Gaffneys on her claim for adverse possession of the ground occupied by the

foundation of Newbill's sun porch and the eaves and gutters directly above the foundation because there is no substantial evidence to support the judgment, it is against the weight of the evidence, and the trial court erroneously declared and applied the law. Newbill's petition referred to her sun porch's gutter and eaves as "Area B" and her sun porch foundation as "Area F."

During the hearing, Newbill presented the testimony of a registered land surveyor (Surveyor) who prepared a survey of 12 Lenox Place and the boundary line with 10 Lenox Place on Newbill's behalf. Surveyor prepared a detail of the area occupied by the sun porch that indicated the front corner of the sun porch's concrete footing extended .25 feet (approximately 3 inches) over the boundary line, and thereafter tapered to the boundary line after a distance of approximately 5 feet (approximately 1.25 square feet). Surveyor also prepared a legal description for the foundation of Newbill's sun porch, which was described in Newbill's Exhibit 30 as "Parcel for Footing of Frame Addition." Surveyor did not prepare a separate legal description of the eaves and gutters because they had approximately the same protrusion as the footings. The legal description Surveyor prepared for the foundation described an area of approximately 10.25 square feet (dimensions of .50 feet by 20.50 feet). This legal description is the one Newbill designated as both "Area B" and "Area F" in Counts V, VI, XI.

■ Initially, we note that the legal description prepared by Surveyor appears inconsistent with the area detailed in his survey. Furthermore, two other surveys were admitted during the hearing, the Gaffneys' Exhibits C and D. Exhibit D, a survey prepared on January 10, 2001, shows a distance of .5 feet between the boundary line and Newbill's sun porch.

Exhibit C was executed January 14, 1953, and shows a distance of 7¾ inches between the front corner of Newbill's sun porch and the boundary line and a distance of 4¼ inches between the back corner of the sun porch and the boundary line.

■ Regardless of which survey or measure we consider, the encroachment Newbill is claiming is very minimal, involving, at most, an area of 10.25 square feet. "When the injury is small, equitable relief should not be granted." *Newmark v. Vogelgesang*, 915 S.W.2d 337, 339 (Mo.App. E.D.1996).

■ Furthermore, one of the elements Newbill must demonstrate to succeed on her claim of adverse possession is that her possession of the property was actual. *Dobbs*, 92 S.W.3d at 180–81. Actual possession requires the plaintiff to show the ability to control the land and the intent to exclude others from control. *Contemporary Mgmt., Inc. v. 1007 Olive P'ship*, 760 S.W.2d 135, 138 (Mo.App. E.D. 1988). Where, as here, the deed from which the plaintiff acquired title did not attempt to convey the property at issue, the plaintiff must show physical possession of the entire disputed area. *Id.* Here, the evidence before the trial court as to the actual location of the sun porch's foundation, eaves and gutters was inconclusive and conflicting. Even the legal description of the area provided by Surveyor appears inconsistent with the area as portrayed in his survey. Given the minimal nature of the alleged encroachment and Newbill's failure to demonstrate this actual possession by the preponderance of the evidence, we find no error in the trial court's grant of judgment for the Gaffneys on Newbill's claim as to the property described in her petition as "Area B" and "Area F." *Dobbs*, 92 S.W.3d at 180–81 (failure to prove just one element is fatal to claim of adverse possession). Point denied.

### Sixth Point—Trespass Claim

In her sixth point, Newbill argues that the Gaffneys' erection of a fence and other acts performed on the property in dispute were trespasses and that exclusion of intruders and protection of children were not reasons justifying extending the fence on Newbill's property. Given our determination that Newbill failed to establish her claim of adverse possession as to this property, the Gaffneys' erection of a fence and performance of other acts on property to which they hold legal title could hardly be termed trespasses. Trespass is the unauthorized entry upon the land of another. *Rosenfeld v. Thoele*, 28 S.W.3d 446, 449 (Mo.App. E.D.2000). Point denied.

### Fifth Point—Easement Regarding Narrow Wedge of Property Adjacent to the Gaffneys' Garage

Finally, in her fifth point, Newbill argues the trial court erred in granting the Gaffneys a prescriptive easement on "Area C" as described in Count VII of Newbill's petition because the Gaffneys pleaded no claim for a prescriptive easement as to this area, there was no evidence that the Gaffneys or any of their predecessors in title ever used "Area C," and none of the elements required for the grant were satisfied. "Area C," a narrow wedge of the Gaffneys' property located adjacent to the Gaffneys' garage, was awarded to Newbill by the trial court.

Issues tried by express or implied consent of the parties shall be treated in all respects as if they had been raised in the pleadings. Rule 55.33(b). Furthermore, pleadings may be amended as necessary to cause them to conform to the evidence adduced at trial at any time, even after judgment. *Id.* During the hearing, Gaffney testified that "Area C" was enclosed by Newbill's backyard fence and stated that he would like to be able to access the wedge of property adjacent to his garage for future maintenance purposes such as tuckpointing the west side of his garage. Newbill did not object when Gaffney indicated that he would like some sort of relief from the court to allow him this access, therefore, this issue was tried with her implied consent.

In its decision, the trial court granted judgment to Newbill on her adverse possession claim to Area C and quieted title in her favor. In conjunction with its award to Newbill, the trial court granted the Gaffneys a prescriptive easement in the parcel for the limited purpose of maintaining their garage.

Prescriptive easements are established when a claimant acts in a manner such as to indicate that he claims a nonexclusive right to use another's property without recognition of the owner's authority to permit or prohibit his use. *Whittom v. Alexander–Richardson P'ship*, 851 S.W.2d 504, 508–09 (Mo. banc 1993). Here, until the trial court's award to Newbill, the Gaffneys were the title owners of the narrow wedge. Given their ownership, we need not determine whether the evidence showed the Gaffneys or their predecessors ever used "Area C" because an owner cannot claim adversely against himself. *Id.* at 509 (adverse use is necessary prerequisite in context of prescriptive easements); *Brick House Cafe & Pub, L.L.C. v. Callahan*, 151 S.W.3d 838, 844 (Mo.App. W.D.2004) (one cannot claim adversely against himself).

Accordingly, the trial court's award of a prescriptive easement in this area is not supported by substantial evidence and is against the weight of the evidence. However, although the evidence presented at trial does not support the award of a prescriptive easement, the evi-

dence was sufficient to support awarding the Gaffneys an easement by necessity in "Area C" to enable them to maintain the west side of their garage.

For an easement by necessity to arise, there must have been: 1) a unity of ownership of the dominant and servient estates; 2) the unity of title must have been severed by a conveyance in one of the tracts, resulting in the grantor or grantee owning a parcel which is landlocked; and 3) the use of the servient estate by the dominant estate must be necessary. *See King v. Jack Cooper Transport Co., Inc.,* 708 S.W.2d 194, 197 (Mo.App. W.D.1986) (plaintiff and defendant must have a common source of title to their properties; severance of estate must have left owner of one of the severed parcels without means of ingress or egress); *Henderson v. LaCapra,* 307 S.W.2d 59, 64 (Mo.App. W.D.1957) (foundation of easement must be necessity and not convenience).

Although the trial court used the term "prescriptive easement" in its grant to the Gaffneys, we conclude the trial court meant "easement by necessity." We accordingly modify, pursuant to Rule 84.14, the trial court's judgment only by deleting its reference to its grant of an easement as a "prescriptive easement" and inserting in its place the term "easement by necessity."

As so modified, the judgment is affirmed.

CLIFFORD H. AHRENS, J., and PATRICIA L. COHEN, J., Concur.