**Mary Jones EIME, Trustee, Respondent,**

v.

**Jerry BRADFORD, Appellant.**

**No. ED 86083.**

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 24, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 2006.

Patricia H. Thomas, Lake St. Louis, MO, for appellant.

Dennis G. Schafer, Montgomery City, MO, for respondent.

KENNETH M. ROMINES, Judge.

Jerry Bradford (Bradford) appeals the Montgomery County Circuit Court's (Court's) Civil Judgment, which declared Mary Jones Eime (Eime) the owner of a .30 acre tract of land, and awarded Eime treble damages for vegetation Bradford removed from this land. We reverse.

## Facts

Since 1967, Eime has owned a tract of land in Montgomery County, which measures approximately 86 acres. In 2003, Bradford purchased approximately 30 acres directly east of the Eime property.

Thus, the Bradford and Eime properties share an east-west border. In 1941, the Kassmans, who owned Bradford's property from 1940 to 1992, built a fence that ran from north to south, between their property and the Eime property. When Bradford purchased his property, he walked the property line and discovered survey stakes located as much as 17 feet west of the fence. Bradford had a survey done in June 2004, which confirmed the actual property line, and discovered that the fence was actually located west of the property line by as much as 21 feet. Thus, a strip of land measuring .30 acres ("disputed property"), located directly west of the fence, was within the boundaries of Bradford's property.

In October 2003, Bradford told Eime that he believed he was the owner of the disputed property, and planned on removing the fence, as well as the trees on the disputed property. Eime responded that the fence is the proper property line and that she owned the disputed property, and asked him not to remove the fence and trees. Approximately one or two weeks later, Bradford again told Eime that he planned to bulldoze the fence and trees; Eime again objected.

In February 2004, Bradford received a letter that indicated that Eime was claiming title to the disputed property by adverse possession, and would file suit against him if he destroyed the fence or otherwise damaged her property. On 31 July 2004, Bradford used a bulldozer to remove part of the fence, as well as some vegetation on the disputed property. That evening, Bradford received a telephone message from Eime, asking him to stop bulldozing the property. On 18 August 2004, Bradford continued clearing the disputed property.

## Procedural History

On 20 August 2004, Eime filed a petition, which requested that the Court declare her the owner of the disputed property by adverse possession, and enjoin Bradford from interfering with her ownership. Eime also requested damages for Bradford's clearing of the disputed property, and asked the Court to enjoin Bradford from further trespassing. On 17 December 2004, Bradford filed his First Amended Answer and Counterclaim, which requested that the Court dismiss Eime's Petition, declare him the owner of the disputed property, and award him damages for trespass. The case was tried before the Court, Judge Wesley C. Dalton, presiding, on 15 February, 2005.

At trial, Bradford testified that, based on the survey information, he believes he owns the disputed property.

Eime testified that her husband helped Mr. Kassman maintain the fence before the Kassmans moved away in 1992; no one has worked on the fence since 1992. Eime admitted that she never logged the woods or cut the timber on the disputed property; never asserted ownership over the property by patrolling it or posting a "No Trespassing" sign; and never ran cattle or planted in the disputed property. Eime also testified that she never discussed ownership of the disputed property with the Kassmans; because Eime and the Kassmans shared the property, there was no need for such a discussion.

Eime also testified as to her alleged use of the disputed property. Eime testified that she farmed a bean field that bordered, but did not actually include, the disputed property. Eime also testified that the property is beautiful, and "screened us from the other road," and that she "enjoyed the wildlife on our farm very much." Finally, although Eime testified that the trees in the disputed property provided

shade and ornament, there is not a house near the disputed property to be shaded.

Charlene Kassman (Charlene) testified that it was her understanding that, from 1967 on, Eime and her husband claimed ownership of the disputed property. When asked what Eime did to make her claim of ownership to this property, Charlene responded that she did not know and did not remember.

On 1 March 2005, the Court issued a Civil Judgment in favor of Eime. The Court found that, in October 2005, Bradford became aware of Eime's adverse possession claim—or at least her belief that she owns the disputed property; Bradford began clearing the disputed property in summer 2004, against Eime's wishes; the vegetation on the disputed property had great aesthetic value to Eime; and no substantial evidence was presented regarding any trespass by Eime on Bradford's property. The Court noted that it would cost $3,452 to replace, and between $600 and $800 to install, new vegetation.

The Court concluded that Eime presented sufficient evidence to show, by a preponderance of the evidence, actual, hostile, open and notorious, exclusive, and continuous possession of the disputed property for ten years, and thus acquired the disputed property by adverse possession. The Court ordered Bradford to pay Eime $10,356 in treble damages for the $3,452 vegetation loss; $700 to install new vegetation; and $909 to install a new barb wire fence, plus costs. Bradford appeals.

### Point One: Adverse Possession

Bradford first argues that the Court erred when it found that Eime acquired the disputed property by adverse possession. In particular, Bradford alleges that Eime failed to present evidence of visible acts of exclusive ownership—her only "use," admiring the property's aesthetic

properties, is not enough to establish title by adverse possession.

We will affirm the Court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

There is a presumption that the record owner of wild and vacant land is the actual owner. *Luttrell v. Stokes*, 77 S.W.3d 745, 749 (Mo.App. S.D.2002). Thus, the party claiming adverse possession has the burden of establishing ownership. *Id.* Every element of an adverse possession claim must be proven by a preponderance of the evidence. *Dobbs v. Knoll*, 92 S.W.3d 176, 180–81 (Mo.App. E.D.2002). The party must show that possession was 1) actual, 2) hostile and under a claim of right, 3) open and notorious, 4) exclusive, and 5) continuous for ten years. *Id.* Because property is unique, each adverse possession case must be decided in light of its own circumstances. *Harris v. Lynch*, 940 S.W.2d 42, 45 (Mo.App. E.D. 1997). We must consider the location, character, and reasonable use of the land. *Id.*

Bradford first challenges the Court's finding that Eime had actual possession of the disputed property. Actual possession is the present ability to control the land and the intent to exclude others from such control. *Dobbs*, 92 S.W.3d at 181. A mere "mental enclosure" of land is not enough for actual possession. *Harris*, 940 S.W.2d at 45. There must be continued acts of occupying, clearing, cultivating, pasturing, building fences or other improvements, and paying taxes. *Id.* (no adverse possession of strip of land between fence and boundary line, when owners merely let cattle have access to the land, extended part of fence, and maintained

fence); *Edmonds v. Thurman,* 808 S.W.2d 408, 411 (Mo.App. S.D.1991) (maintenance of old fence built by predecessor in title not enough to establish adverse possession).

 It is true that the actual possession element of adverse possession is less strict for wild, undeveloped land than it is for developed land, because the nature, location, and potential uses for the property may restrict the type of affirmative acts of ownership. *Luttrell v. Stokes,* 77 S.W.3d 745, 749 (Mo.App. S.D.2002); *Whiteside v. Rottger,* 913 S.W.2d 114, 120 (Mo.App. E.D.1995). However, even cases that find actual possession of wild and undeveloped land involve much more significant acts of possession than those alleged by Eime. *See Whiteside* (adverse possession of undeveloped land established when owners built fence and well on land; fished and hunted on land; and removed timber from land). *See also Edmonds* at 411 (occasional trespasses such as intermittent use of land for pasture or gathering firewood do not establish adverse possession).

Eime's alleged uses of the disputed property—farming an adjacent bean field, and enjoying the property's shade and aesthetic properties—do not amount to actual possession. Eime has failed to establish this element of her adverse possession claim by a preponderance of the evidence.

 Bradford next challenges the Court's finding that Eime's alleged possession of the disputed property was open and notorious. Open and notorious possession is shown if the claimant's occupancy was "conspicuous, widely recognized, and commonly known," and is shown by visible acts of ownership. *Dobbs v. Knoll,* 92 S.W.3d 176, 180–81 (Mo.App. E.D.2002). It is true that the wild and undeveloped nature of

property may increase what is required to prove that possession is open and notorious: "[t]he fact that the land in question is wild, undeveloped and covered in woods and hills in no way lessens what is required to satisfy the element of possession being 'open and notorious' and, indeed, may very well increase it." *Flowers v. Roberts,* 979 S.W.2d 465, 471 (Mo.App. E.D.1998) (holding that "minimal and sporadic" efforts to maintain a dirt road, plus driving on road a few times each year, was not enough to show that possession of wild and undeveloped land was open and notorious).

Eime testified that she never patrolled the disputed property or posted a "No Trespassing" sign, or otherwise asserted ownership of the disputed property. Eime's alleged visible acts of ownership are far from "conspicuous, widely recognized, and commonly known." Eime has failed to show that her alleged possession of the disputed property was open and notorious.

As mentioned above, a claimant must prove every element of his or her adverse possession claim by a preponderance of the evidence. Eime has failed to show that her alleged possession of the disputed property was actual or open and notorious. This is more than enough to defeat her adverse possession claim. There is no need to address the remaining elements.

Point one is granted.

### Point Two: Treble Damages

Bradford's second point on appeal challenges the Court's decision to award Eime treble damages for trespass, pursuant to Section 537.340,[1] rather than single damages, pursuant to Section 537.360. Because we find that Bradford is the true

---

1. All statutory references are to RSMo. (2000).

owner of the disputed property, no trespass occurred; thus, Sections 537.340 and 537.360 do not apply, and we do not need to consider Bradford's related arguments. The Court's award of treble damages is reversed.

The judgment is reversed. The Court is ordered to enter judgment for Bradford on Eime's claim for adverse possession.[2]

GARY M. GAERTNER, SR., P.J. and GEORGE W. DRAPER, concur.

---

**2.** We note that the court below denied Bradford's claim for damages for trespass to his property by Eime. However, because Bradford did not appeal the Court's ruling on this issue, we have no authority to review this issue.